FOREST CONSTRUCTION COMPANY *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF BETHANY

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued November 8—decided December 19, 1967

*Robert J. Engelman,* with whom were *Robert A. Smith* and, on the brief, *Max H. Schwartz,* for the appellant (defendant).

*Jerrold H. Barnett,* for the appellee (plaintiff).

COTTER, J.  The plaintiff appealed to the Court of Common Pleas from a refusal of the defendant, the town planning and zoning commission of Bethany, for preliminary approval of its plan for a subdivision of its property.  The court rendered judgment sustaining the appeal, and from that judgment the present appeal has been taken.

The plaintiff owns approximately 275.4 acres of land in the towns of Bethany and Woodbridge. The Bethany land is in an R-65,000 zone. On August 3, 1965, it filed an application with the defendant commission, seeking preliminary approval of a 113-lot subdivision of a large parcel of interior, essentially landlocked property lying to the east of Bethmour Road in the town of Bethany. The proposed subdivision encompasses most of the acreage referred to above. The subdivision plan shows only one road which provides access to and egress from the subdivision over a fifty-foot wide strip of land known as Druid Hills Road. Part of this road traverses a bridge, and the westerly terminus of Druid Hills Road, as proposed, ends at its intersection with Bethmour Road, the only public highway which borders the subdivision. The subdivision plan provides for an interior network of roads extending into cul-de-sacs. Druid Hills Road, however, affords the only access to the public highway from the interior roads.

For a period of approximately two months before filing the formal subdivision application, the commission met or communicated with officers of the plaintiff, the plaintiff's attorney and other of its representatives on many occasions concerning the proposed subdivision. These meetings and communications continued after the filing and dealt with several areas of controversy, particularly the commission's objections to the layout of roads and the proposed single access with the public highway.

On September 8, 1965, Jerrold H. Barnett, the plaintiff's attorney, wrote to the commission enclosing a study by the plaintiff's traffic engineer, Harvey B. Boutwell, which was considered by the commission. Barnett stated in his letter to the commission

that the plaintiff would be pleased to have Boutwell present to answer any questions which the commission might have, and again on September 17, 1965, in a letter to the commission, Barnett requested information as to a date of appearance and asked if Boutwell's presence was desired. Barnett and other representatives of the plaintiff met again with the commission on October 4, 1965, and they were then advised of the commission's decision that no development could be approved without satisfactory provision for a second access road. In early November, 1965, the plaintiff submitted a revised map improving the internal road layout but still providing for a single way for access to the public highway. The plaintiff and its representatives again met with the commission on November 15, 1965, and all previous objections were reviewed and many of these were found to have been remedied. The plaintiff reported that, although all possibilities had been explored, no second access was possible. Thereafter, the plaintiff's attorney submitted a memorandum regarding access to the Druid Hills subdivision and a sight-distance study of the intersection of the proposed Druid Hills Road and Bethmour Road prepared by Boutwell.

On January 6, 1966, the commission met with a group of people to discuss the subdivision plan. At this meeting a traffic report by Earl Flynn, a traffic engineer, was submitted, and opposition was expressed to the plaintiff's plan on the grounds that the single access was unsafe and that the intersection of Druid Hills Road and Bethmour Road was dangerous owing to poor visibility and traffic congestion. Notice of this meeting was not given to the plaintiff, nor was any notice published by the commission.

In an executive session, that evening, the commission denied the plaintiff's application for the following reasons: The proposed single access to the existing public highway could create a hazardous concentration of traffic at the west end of Druid Hills Road; in the case of blockage of this access, the occupants of the subdivision could not be assured of reasonable protection from fire, panic, and other dangers; the problem of single access was accentuated by the fact that a portion of it would be over a bridge; the plaintiff's proposal to divide the road over the bridge into two lanes still essentially provided a single access; the provision for transportation for future residents was inadequate and the transportation of school children over more than three miles of cul-de-sac would be inconvenient and hazardous; and, as all the traffic from the subdivision would depend on the Druid Hills Road exit, this road would create a dangerous intersection with Bethmour Road.

The plaintiff's appeal to the Court of Common Pleas from the commission's denial alleged various grounds of illegality. In summary, these allegations were as follows: The commission heard opponents of the application on January 6, 1966, without giving the plaintiff notice to attend and an opportunity to be heard; the commission failed to schedule an appearance for an expert witness of the plaintiff "although it had been requested to so do"; the commission had failed to adopt a town plan of development in accordance with the General Statutes; the commission had improperly delegated its authority to other town agencies; its action was special legislation since there were no adequate regulatory standards to guide the commission's discretion.

Reference to the memorandum of decision filed in

the present case shows that the judgment of the trial court was based on the commission's failure to give the plaintiff notice of and an opportunity to be heard at the meeting of January 6, 1966, which it concluded constituted illegal action on the part of the commission.

The commission, pursuant to General Statutes § 8-26, is not required to hold a public hearing in every case regarding a subdivision proposal presented to it. The statutory requirement provides that the commission may hold such a hearing if, in its judgment, the specific circumstances require such action. The Bethany subdivision regulations include a similar provision and in addition provide that the commission shall hold a public hearing regarding any subdivision proposal "if specifically requested in writing by 5 electors of the Town of Bethany." Bethany Subdivision Regs. § 4.1 (1963). A public hearing is not therefore mandatory either by statute or regulation. A municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross-examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken, as exemplified in such cases as *Parish of St. Andrew's Protestant Episcopal Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 232 A.2d 916, and *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 68 A.2d 152. See 2 Am. Jur. 2d, Administrative Law, § 403. The planning commission, acting in its

administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. *Langbein v. Planning Board,* 145 Conn. 674, 679, 146 A.2d 412. If it does not conform as required, the plan may be disapproved.

The reasons stated by the commission in disapproving the preliminary subdivision plan are reasonably supported by the facts shown in the record before the commission. The members of the commission were entitled to consider any facts, concerning the area, traffic, intersection and surrounding circumstances, which they had learned by personal observation, and their conclusions as to the effect of the use of the network of roads in the subdivision as shown on the proposed plan on traffic safety and hazard to the public are ones which they could reach without the aid of experts. *Gulf Oil Corporation* v. *Board of Selectmen,* 144 Conn. 61, 65, 66, 127 A.2d 48.

Section 6.2 of the Bethany subdivision regulations provides as follows: The Commission reserves the right to reject applications for the development of land when such development might be hazardous to the health and welfare of the community." Crowding all the traffic from this subdivision of 110 lots (the original plan of 113 lots was reduced after the application was made) onto one fifty-foot roadway crossing a bridge and discharging that traffic all onto Bethmour Road at one intersection could well be found by the commission to be good cause for deciding, in accordance with its power under § 6.2 of its subdivision regulations, that the development would be hazardous to the health and welfare of the community. *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 151, 168 A.2d 547.

The procedure followed by the commission did not constitute a denial of due process as claimed by the plaintiff. The basis for its judgment is amply supported in the record. Although the requirements of substantial justice must be followed, strict and technical rules of procedure need not be enforced. A commission, operating at the administrative level under the circumstances of the present case, has a wide latitude in the mode permitted to parties in presenting their views before it. The implication is that it may use any procedure which is reasonable in attaining the end in view. Due process deals with matters of substance, and the reasonableness of the conclusion of the commission is apparent from a review of the evidence before it. The plaintiff had notice of and was fully aware of the issues with which it was confronted. It had a full opportunity to meet these issues at the series of meetings which its representatives attended with members and representatives of the commission. There is no showing of error or prejudice so as to constitute a denial of due process. *Market Street Ry. Co.* v. *Railroad Commission,* 324 U.S. 548, 560, 561, 562, 65 S. Ct. 770, 89 L. Ed. 1171, rehearing denied, 324 U.S. 890, 65 S. Ct. 1026, 89 L. Ed. 1438; *State ex rel. York* v. *Walla Walla,* 28 Wash. 2d 891, 915, 184 P.2d 577. The commission gave considerable time and ample deliberation to all aspects of the problems confronting it. It made a fair and full investigation of the facts, and the record demonstrates a purpose on its part to serve the public interest. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 13, 202 A.2d 241. It cannot be said that the action of the commission in this regard was illegal, arbitrary or in abuse of the discretion vested in it as claimed by the plaintiff.

The defendant commission was originally constituted as a zoning commission. In 1955, it was granted planning powers, so that, thereafter, under the General Statutes, it had the powers and duties of both a planning and zoning commission. The plan of development contemplated by General Statutes § 8-23 is a term of broader significance than that of zoning. The two terms are not interchangeable. Planning connotes a systematic development of a municipality to promote the general welfare and prosperity of its people with the greatest efficiency and economy, while zoning is concerned primarily with the use of property. *Kiska* v. *Skrensky,* 145 Conn. 28, 32, 138 A.2d 523; 101 C.J.S. 671, Zoning, § 4. The plan of development, an exhibit in the record before us, is entitled "Comprehensive Plan" and is subtitled "Recommendations of Planning and Zoning Commission." It refers in content to the zoning ordinance and the land use map of the town of Bethany. Although the incorrect use of terms is confusing, it is apparent that the town, through its commission, did legally adopt a plan of development, although limited in scope, and also that it has a comprehensive plan which consists of the zoning regulations themselves and the maps of the zones adopted pursuant to them. *Pierrepont* v. *Zoning Commission,* 154 Conn. 463, 466, 226 A.2d 659; *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 540, 209 A.2d 179.

The commission, prior to this controversy, pursuant to § 8-25 of the General Statutes, had adopted regulations as to subdivisions and roads, effective June 25, 1963, which included the following: "Section 5—Roads 5.1 Before the preliminary plan is submitted all proposed road specifications shall have been approved by the Selectmen as conforming

with the road specifications of the Town of Bethany as amended from time to time, such approval to be endorsed in writing on the document giving the specifications of the proposed road or roads. 5.2 Roads shall be laid out to conform with existing roads on adjacent properties and, if the Commission requires it, with proposed roads. 5.3 Road intersections, gradients and curves shall be so designed as to permit adequate visibility for both pedestrian and vehicle traffic. . . . Section 6—General Regulations 6.1 Proposed subdivisions shall conform to the adopted comprehensive plan of development, and to zoning regulations, except that the Commission may require lot sizes in excess of the minimum requirements."

The approval of proposed road specifications by the selectmen as conforming with those of the town required by the regulations quoted is not an improper delegation of authority as claimed by the plaintiff. The powers of decision remain with the commission after it receives the report of the selectmen. *Baker* v. *Kerrigan,* 149 Conn. 596, 600, 601, 183 A.2d 268. The use of agencies of the town is essential to the proper transaction of the business of the commission. It is not uncommon to delegate ministerial functions as was done in this case. *Langbein* v. *Planning Board,* 145 Conn. 674, 680, 146 A.2d 412; see *Papagianakis* v. *The Samos,* 186 F.2d 257 (4th Cir.), cert. denied, 341 U.S. 921, 71 S. Ct. 741, 95 L. Ed. 1354; *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 403, 225 A.2d 637; Rathkopf, Law of Zoning and Planning (3d Ed.), p. 71-12 § 9; 73 C.J.S. 381, Public Administrative Bodies and Procedure, § 57.

The regulations adopted by the commission, pursuant to General Statutes § 8-25, provided, in addi-

tion to those already discussed, that the proposed subdivision shall conform not only to the plan of development but to the zoning regulations, the preamble of which states: "The purpose of these regulations is to promote the health, safety and general welfare of the Town of Bethany by preventing the overcrowding of land and avoiding undue concentration of population, by preventing or lessening congestion of the public highways, by securing safety from fire, panic, and other dangers, and facilitating adequate provision for transportation." The plan of development also recommends the avoidance of dead-end roads and the requirement of adequate turnarounds. The regulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be "lacking in precision of meaning to afford a standard sufficient to sustain" them. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 541, 45 A.2d 828; *Stavola* v. *Bulkeley,* 134 Conn. 186, 190, 56 A.2d 645; note, 58 A.L.R.2d 1083, 1101 § 5. Bethany is a rural community, largely undeveloped. Its needs, in terms of highly detailed subdivision regulations, at least at the present, are not to be compared with those of other towns whose zoning schemes, or states of development, may impose greater requirements. Cf. *Lebanon* v. *Woods,* 153 Conn. 182, 188, 190, 191, 215 A.2d 112.

It is unrealistic to demand detailed standards which are impracticable or impossible. *Bowles* v. *Willingham,* 321 U.S. 503, 515, 64 S. Ct. 641, 88 L. Ed. 892. As the complexity of economic and governmental conditions increases, the modern tendency is liberal in approving broad regulatory standards so as to facilitate the operational functions of administrative boards or commissions. It is apparent

680

that the regulations are within the purview of the enabling act, and the criteria contained in the commission's regulations are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. *American Power & Light Co.* v. *Securities & Exchange Commission,* 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103; *Ours Properties, Inc.* v. *Ley,* 198 Va. 848, 857, 96 S.E.2d 754; 1 Am. Jur. 2d 921, Administrative Law, § 118. Although some of the standards may be general in their terms, they are reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases. *Blakeman* v. *Planning Commission,* 152 Conn. 303, 307, 206 A.2d 425.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.