[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above two cases have been consolidated since they each involve an appeal from the decision of the defendant Newington Town Planning and Zoning Commission (the Commission) denying an application for subdivision of a thirty-three (33) acre parcel of land (the property) into four lots. The plaintiffs are Radot, Inc. (Radot), George Marshall, Harry Marshall, and Nathan Marshall (the Marshalls).
The Marshalls are the owners of the property in question. The property is a thirty-three acre parcel of land located on Cedar Street (Route 175) in an industrial zone in Newington, Connecticut. The property is bounded on the north by Cedar Street, on the west by a railroad right-of-way, on the south by land owned by the State of Connecticut, and on the east by a HELCO right of way and a railroad easement. In addition, 48% of the property is subject to a conservation easement. The property has only about 240 feet of frontage on Cedar Street.
Radot entered into a contract (original agreement) with the Marshalls on January 17, 1986, whereby Radot was granted a one year option to purchase the property. Radot's (option agreement) option was extended to December 31, 1988 by an Extension Agreement executed on December, 31, 1986, and was again extended to December 30, 1989, by an Extension Agreement executed on December 30, 1988. Both Extension Agreements ratified the Original Agreement. Pursuant to the terms of the Original Agreement, Radot notified the Marshalls by letter dated December 29, 1989, that Radot was exercising its right to extend its option. (Testimony of Walter Kuczek, V. P. of Radot, Inc. at Court Hearing of April 2, 1991; plaintiff's CT Page 6200 Exhibit Y). Since Radot complied with the terms of the Original Agreement, Radot's option has been automatically extended until thirty days after a final decision of the Connecticut Supreme Court. (Option Agreement 6).
On October 11, 1989, Radot submitted an application, which was signed by George Marshall as owner of the property, seeking subdivision of the property in question. Radot proposed to subdivide the property into four industrial lots. Lot 1 was set out at 5 1/2 acres; Lot 2 at 4 acres; Lot 3 at 9 acres; and Lot 4 at 12 1/2 acres. The subdivision would only be accessed by a cul-de-sac which would intersect with Cedar Street (Route 175), a state highway).
As part of the application, Radot requested a waiver of five items required by the town's subdivision regulations. These items included the following: 1) a reduction in the length and grade of the tangent grade at the point where the cul-de-sac intersects with Cedar Street (3.4.4.1); 2) an increase in the maximum length of the cul-de-sac from 650 to 1203 feet (3.4.7); 3) a waiver of the maximum lot depth to width ratio of 2.5 to 1 for Lots 1 and 3 (3.7.); 4) a waiver of the requirement of two trees per lot (3.9); and 5) a waiver of the requirement that sidewalks be installed (4.9).
Radot's application was officially received by the Commission on October 25, 1989, the date of the Commission's next regularly scheduled meeting. By letter dated November 16, 1989, the Commission requested an extension of the sixty-five day period within which a public hearing is required under Conn. Gen. Stat. 8-26d (a). Radot never responded to the request.
On December 13, 1989, within the sixty-five day period, a public hearing was held on Radot's application. The Commission then unanimously voted to deny Radot's application.
On December 20, 1989, the Commission published its legal notice denying Radot's application. Additionally, by certified letter dated December 19, 1989, the Commission informed Radot of its decision and the reasons for denying the application.
On December 29, 1989, Radot commenced an appeal, CV-90-0371861S, pursuant to Conn. Gen. Stat. 8-28 and 8-8, within 15 days of publication of the Commission's decision as required by Conn. Gen. Stat. 8-8 (b). Thereafter, on January 4, 1990, Radot and the Marshalls commenced an appeal, CV-90-0372221S, within the 15 day requirement of Conn. Gen. Stat. 8-8 (b). CT Page 6201
The plaintiffs have appealed on the following grounds:
 (1) the Commission acted illegally and outside the scope of its authority in that it denied the Applications on the basis of traffic considerations relating to a state highway (Route 175) that were properly and exclusively within the jurisdiction of the Connecticut Department of Transportation and the State Traffic Commission;
 (2) the Commission acted arbitrarily and in abuse of its discretion in that its decision was based, in part, on technical findings which were contrary to the evidence before it and without stating the basis for such findings; and
 (3) the Commission acted arbitrarily and in abuse of its discretion in basing it's decision, in part, on denial of the Plaintiffs' request for waiver of certain requirements under the Newington Subdivision Regulations.
At the hearing on April 2, 1991, the cases were consolidated for purposes of this appeal. In addition to the above issues, the issue of whether Radot and the Marshalls are aggrieved was argued at the hearing.
 II.
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). A plaintiff must allege and prove aggrievement. Id. Pursuant to Conn. Gen. Stat. 8-8 (a)(1), any person owning land which abuts or is within a radius of one hundred feet of the land involved in any decision of a zoning board is statutorily aggrieved and need not prove aggrievement. Id. Otherwise, to be aggrieved one must have a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as the concern of all members of the community, and one must be specially and injuriously affected as to property or other legal rights. Smith, 203 Conn. at. 321. An owner of the subject property of a subdivision application is aggrieved and entitled to bring an appeal. Bossert Corp. v. Norwalk, 157 Conn. 279, 285 (1968).
Radot's Aggrievement
The Commission argues that Radot is not aggrieved because Radot has pled, in paragraph 6 of the first complaint CT Page 6202 and in paragraph 4 of the second complaint, that its option expires on December 30, 1989. According to the Commission, such pleadings are judicial admissions and are taken as true. See State v. Rodriguez, 180 Conn. 382, 396 (1980). Thus, the Commission argues Radot's interest in the property has been extinguished. The Commission further argues that since the Commission requested an extension and Radot's attorney stated Radot could not grant an extension because the option expires on December 31 , 1989 (ROR #6, p. 34), such statements are admissions by counsel concerning the expiration date and are binding on Radot as principal by its agent. Radot argues that the statements in the complaint and the statements at the hearing were true when made, that the option never lapsed, and that it extended the option under section 6 of the Original Agreement. (Complaint Exhibit B, Option Agreement 6; Plaintiff's Exhibit Y).
"A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." Hirsch v. Thrall, 148 Conn. 202, 207 (1961). It is found that the statements made in the complaint and at the hearing were true when made; however, to accept them as judicial admissions would be contrary to the evidence in the file and the evidence entered at the hearing. (Complaint Exhibit B; Plaintiff's Exhibit Y). Under the terms of Radot's Original Agreement and the two Extension Agreements, Radot's option would expire on December 30, 1989, unless otherwise extended. When the Commission on November 1, 1989, requested an extension for the hearing date, Radot could have granted it and could have, under 5 of the Original Agreement, automatically extended its option for 12 months by sending written notice to the Marshalls. Radot, however, chose not to do so. Thereafter, the application hearing was held on December 13, 1989, and the Commission published its decision on December 20, 1989. On December 29, 1989, Radot commenced an appeal and notified the Marshalls by letter dated December 29, 1989, that Radot was extending its option under section 6 of the Original Agreement. (Testimony of Walter Kuczek , V. P. of Radot , Inc., at Court Hearing of April 12, 1991; Plaintiff's Exhibit Y; Option Agreement 6).
It is therefore concluded that Radot's option never lapsed and that since Radot fulfilled the terms of section 6 in the Original Agreement, Radot's option has been automatically extended until thirty days after a final decision of the Connecticut Supreme Court. (Option Agreement 6).
The holder of a contract or an option to purchase property has a sufficient legal interest in it to establish the CT Page 6203 aggrievement requirement for an appeal from the denial of the application. Shapero v. Zoning Board, 192 Conn. 367, 376
(1984); Goldfeld v. Planning Zoning Commission, 3 Conn. App. 172,176 (1985). It is therefore held that Radot, as the holder of an option to purchase the property, and unsuccessful applicant who has a substantial financial investment in the property, is aggrieved. Goldfeld, 3 Conn. App. at 176; Housatonic Corporate Centre Associates Limited Partnership v. Planning Zoning Board of the City of Milford,1 Conn. L. Rptr. 345, 347 (May 31, 1990, Fuller, J.).
Marshalls' Aggrievement
The Marshalls' complaint alleges they are the owners of the property. The subdivision application is signed by George Marshall as the owner of the property (ROR #1). Other Record items indicate the Marshalls as owners of the property (ROR #1 p. 4; ROR #4; ROR #5, p. 1; ROR #6, p. 1). In addition, many town and business documents indicating the Marshalls' ownership were entered into evidence at the hearing. (Plaintiff's Exhibits E-P; R-X). Most important, George Marshall testified that he, his brother and other relatives are the owners of the property, and that such ownership has been continuous and uninterrupted. (Testimony of George Marshall at Court Hearing of April 2, 1991). It is therefore concluded that the Marshalls are owners of the property which is the subject of the subdivision application and, therefore, that they are aggrieved. Bossert, 157 Conn. at 285.
 III.
The plaintiff has the burden of proof in challenging the commission's decision. Red Hill Coalition v. Conservation Commission, 212 Conn. 710, 718 (1989).
The court is only to determine whether the local authority has acted illegally, arbitrarily, or in abuse of its discretion. Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 554, 573 (1988). The court determines whether the record reasonably supports the conclusions reached by the commission. Primerica v. Planning Zoning Commission,211 Conn. 85, 96 (1989). The action of the commission should be sustained if any one of the stated reasons is sufficient to support the action. Id.
 IV.
Conn. Gen. Stat. 8-26 states, "The commission shall approve, modify and approve, or disapprove any subdivision . . . application . . . ." "[A commission] has no CT Page 6204 discretion or choice but to approve a subdivision which conforms to the regulations." Langbein v. Planning Board,145 Conn. 674, 679 (1958). "Conversely, if the subdivision plan does not conform to the regulations the plan must be disapproved." Westport v. Norwalk, 167 Conn. 151, 158 (1974).
The Commission stated the following six reasons for denying Radot's application:
 1) The Commission finds that the proposed intersection of Cedar Street (Route 175) and Peters Drive would not comply with Section 3.4 of the Subdivision Regulations.
 2) The Commission finds that the request for waiver from Section 3.4.4.1 is not warranted and would result in an unsave intersection of a proposed town street and does not comply with the town's subdivisions standard and intent.
 3) The Commission further finds that the applicant's request for other waivers have [sic] not been justified and are not granted.
 4) The traffic operations, safety and capacity related issues are very severe and negative and the solutions offered are untested and are not proven solutions. The suggested solutions will cause further deterioration of capacity and safety.
 5) The left turns into the site without a separate left turn lane on Cedar Street will cause serious congestions and reduce safety of motorists.
 6) Any further changes in the use of the proposed site from light industrial to any use generating slightly more number of trips will result into reduction of capacity and safety of operations. The plaintiffs argue that the above stated reasons are not appropriate bases for denying their application. Specifically, the plaintiffs contend that the Commission would findings were contrary to the evidence, and that the Commission should have either granted the request for waiver or modified plaintiffs make the general argument that all six reasons relate to offsite traffic and safety concerns, and, therefore, are not appropriate bases for denial of the application.
Reasons two and three pertain to the requested waiver. The plaintiff contends the property falls within section 4.13 of the Town's subdivision regulations and, therefore, the CT Page 6205 Commission should have exercised reasonable discretion and granted the waivers. Section 4.13 (Modifications) provides:
 The Commission, upon written request, from the Developer, may modify or vary specific requirements herein with respect to a subdivision where owing to conditions especially affecting such subdivision a literal enforcement of these regulations would result in practical difficulty and unusual hardship, so that substantial justice will be done and the purpose and intent of those regulations secured.
At the hearing before the Commission, Mr. Kuczek, the Vice President of Radot, said the subdivision plan was feasible without the requested waivers. (ROR #6, p. 28). Therefore, the Commission could have concluded, based on this testimony, that section 4.13 was inapplicable and therefore no waivers were required. The Commission in concluding the waivers were not required, could on this basis deny the plaintiffs' application.
The plaintiffs, however, argue that the Commission, in response to Mr. Kuczek's testimony, should not have denied the application based on a denial of the waivers, rather the Commission should have modified and approved the application as authorized by Conn. Gen. Stat. 8-26. "A commission may, at its discretion, choose between disapproval or approval with conditions." Krawski v. Planning Zoning Commission, 21 Conn. App. 667,673 (1990), see Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303, 308-09 (1988).
In the present case, the Commission decided to disapprove the subdivision plan. The court should not substitute its judgment for that of the commission. Krawski, 21 Conn. app. at 673; see Goldfeld v. Planning Zoning Commission, 3 Conn. App. 172, 178 (1985). It is therefore held that the Commission did not abuse its discretion in denying the plaintiffs' subdivision application.
Reason two also pertains to the proposed intersection of Cedar Street and the cul-de-sac, as does reason one and perhaps reasons four and five. The Commission's concern with the intersection is twofold: 1) the safety of the intersection, and 2) the intersections noncompliance with subdivision regulations sections 3.4 and 3.4.4.1. Section 3.4 provides in part; "Streets shall be planned in such a way as to provide a safe and convenient street system for present and future traffic and shall fit the topography of the land as much as possible." Section 3.4.4.1 provides in pertinent part: "The tangent grade CT Page 6206 as measured from the intersecting street lines to the Point of Vertical Intersection on the vertical curve shall have a minimum length of 100 feet and shall be no more than 3% (plus or minus)."
The plaintiffs' subdivision plans proposed a 50 foot tangent distance at a grade of 1.9% as measured from the curbline on Cedar Street.(ROR #6, p. 18; ROR #14, p. 9). Daily traffic generated on Cedar Street totals 27,275 vehicles with a morning peak hour of 2122 vehicles and late afternoon peak hour of 2521 vehicles. (ROR #6, p. 21). It was estimated that the plaintiffs' subdivision would generate 1120 vehicles a day with a morning peak hour of 149 vehicles and late afternoon peak hour of 158. (ROR #6, p. 21).
The sight lines at the location of the intersection are a problem (ROR #6, p. 21) and in lieu of the maximum sight line distance a traffic signal would be installed. (ROR #6, p. 25). The cue lengths at the traffic signal were based on the vertical signal capacity. (ROR #6, p. 22). Based on this information, it is found the Commission could have reasonably concluded the intersection would be unsafe. It is therefore concluded that the Commission could deny the plaintiffs' application either because the intersection did not comply with subdivision regulations sections 3.4 and 3.4.4.1 or because the intersection would be unsafe.
The plaintiffs argue, however, that the Commission could not base its denial on these reasons because the Commission ignored the plaintiffs' expert's testimony and because they relate to offsite traffic considerations. The plaintiffs contend that the only expert testimony was given by their expert who testified that it was his opinion that the traffic signals would make "a marked improvement . . . in the traffic operation of this section of highway" and therefore the subdivision would "not create a traffic problem." (ROR #7, p. 3; see ROR #6, p. 22). An administrative agency is not required to believe any witness, even an expert. Manor Development Corporation v. Conservation Commission, 180 Conn. 692,697 (1980). Moreover, commission members may rely on personal knowledge and observation concerning intersections, traffic congestion, and traffic safety. Gulf Oil Corporation v., Board of Selectmen, 144 Conn. 61, 66 (1956); see Forest Construction Co. v. Planning Zoning Commission, 155 Conn. 669,675 (1975). In fact, when plaintiffs' expert was questioned as to the need for a storage lane for left turning vehicles, the expert stated that it was his opinion such a lane was not needed and that other experts could have different opinions. (ROR #6, p. 32). It is therefore found that the Commission could have reasonable concluded, based on this CT Page 6207 testimony and its own knowledge and observation, that the intersection would be unsafe.
The plaintiffs argue that the Commission's offsite traffic considerations are rendered irrelevant as a result of TLC Development, Inc. v. Planning Zoning Commission,215 Conn. 527 (1990), and Sowin Associates v. Planning Zoning Commission, 23 Conn. App. 370 (1990). The plaintiffs contend that TLC and Sowin prevent a denial based on offsite traffic considerations.
Conn. Gen. Stat. 8-25 states in pertinent part:
 [T]he commission shall adopt regulations covering the subdivision of land . . . such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety . . . that the proposed principal thoroughfares shown in the plan of development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective convenient system for present and prospective traffic needs.
Additionally, traffic impact is a consideration as "such regulations shall be designed to lessen congestion . . . ." Conn. Gen. Stat. 8-2. Therefore TLC and Sowin do not eliminate the need for offsite traffic safety analysis/Friedman v. Rocky Hill Planning Zoning Commission, 4 Conn. L. Rptr. 129, 131 (May 15, 1991, Berger, J.).
TLC, supra, involved the Branford Zoning Commission's denial of a site plan application because of increased traffic on Route 1 in Branford, increased traffic on the local streets in the vicinity, and the inconveniently located rear parking area although there were no regulations applicable to such considerations. The Connecticut Supreme Court affirmed the trial court's decision sustaining TLC's appeal of the Commission's denial of TLC's application for site plan approval, concluding that language regarding offsite traffic as a reason for denying the application was not in the zoning regulations.
Sowin, supra, involved an eleven-lot residential subdivision that would generate minimal traffic. Although the CT Page 6208 subdivision application complied with the subdivision regulations, the South Windsor Zoning Commission denied the application because of traffic congestion and safety concerns on streets in the vicinity and an increase in congestion generated from the subdivision. The Appellate Court affirmed the trial court's decision sustaining Sowin's appeal, concluding that Sowin's application complied with the subdivision regulations and that there were no regulations pertaining to offsite traffic.
In the present case, the subdivision and zoning regulations quoted below do pertain to offsite traffic. Also in the present case, the Commission denied the plaintiff's application because of noncompliance with the regulations and because the Commission found that the intersection would be unsafe. Therefore the present case is not controlled by either TLC or Sowin.
Pursuant to Conn. Gen. Stat. 8-25, the Commission has adopted regulations concerning the subdivision of land. Particular regulations provide that (1) building lots "cannot be developed for building purposes without danger to health, welfare, or safety;" (2) "[s]treets shall be planned in such a way as to provide for present and future traffic;" and (3) [p]roposed local streets shall be planned to discourage through traffic and to provide a safe and convenient system for present and prospective traffic in the area surrounding the proposed subdivision." Newington Subdivision Regulations 3, 2, 3, 4, 3.4.6. In addition, section 3.1 of the subdivision regulations incorporates the Town's zoning regulations. Section 5.3.3B of the Newington Zoning Regulations provides, "Traffic circulation within the site, amount, location and access to parking; and traffic generated and possible traffic hazard or circulation problems on existing or proposed drives or streets." Based on these regulations the Commission could consider offsite traffic. Further the Commission could find the intersection and therefore the subdivision to be hazardous to the health, safety and welfare of the community. Forest Construction Co. v. Planning Zoning Commission, 155 Conn. 669,675 (1967).
The plaintiffs also argue that the Commission could not consider Cedar Street traffic because the Commission has no jurisdiction over Cedar Street, a state highway which is under the exclusive jurisdiction of the Connecticut Department of Transportation (DOT). Therefore the plaintiffs argue the Commission could not deny the application based on traffic congestion on Cedar Street. Such a denial, they contend, constitutes regulation of a state highway, which is a function of the DOT. CT Page 6209
The plaintiffs are correct that Cedar Street is under the exclusive jurisdiction of the DOT, Conn. Gen. Stat.13b-24 — 13b-26 (b), specifically the State Traffic Commission (STC). Conn. Gen. Stat. 14-298. However, in view of the previous discussion, the Commission's action does not constitute regulation of traffic on a state highway, but is an application of the Town's subdivision regulations. As discussed, the Commission based its denial on noncompliance with the subdivision regulations. Also as discussed, the Commission based its denial on finding that the intersection would be unsafe, and the Commission could have reasonably concluded the intersection would be unsafe.
Reason six concerns "a reduction of capacity and safety" based on "any future changes in the use of this proposed site from light industrial to any use generating slightly more number of trips." The plaintiffs' application was for a light industrial subdivision. Reason six pertains to future changes in use from light industrial. The plaintiffs' application did not propose any future change in use, nor are there any subdivision regulations governing such an application. In passing upon a subdivision plan, the commission's actions are controlled by the regulations adopted for its guidance. Langbein v. Planning Board, 145 Conn. 674, 679 (1958). Therefore reason six is an improper basis for the Commission to deny the plaintiffs' application.
 IV
The Commission gave six reasons for denying the plaintiffs' application. The Commission found that the waivers requested by the plaintiffs were not justified (reasons two and three) and, therefore, since the application did not comply with the subdivision regulations, denied the application. The Commission also found that the proposed intersection was not in compliance with sections 3.4 and 3.4.4.1 of the subdivision regulations (reasons one and two) and therefore denied the application. Moreover, since the proposed intersection did not comply with section 3.4.4.1 (reason two), the Commission found the intersection to be unsafe and therefore denied the application. Finally, the Commission found that the intersection would be unsafe (reasons four and five) because of traffic turning into the cul-de-sac and therefore denied the application. In conclusion, since the Commission has given at least one reason to support their action, the plaintiffs have not met their burden of proof that the Commission acted illegally, arbitrarily, and in abuse of its discretion. It is therefore held that the plaintiffs' appeals be and is hereby dismissed. CT Page 6210