[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is the owner of a four lot subdivision which she seeks to resubdivide into five building lots in the R-10 Zone. This classification permits single family houses on 10,000 square feet of land. The defendant Planning Board denied her application. This resulted not only in an appeal but also in the institution of a parallel action for a declaratory judgment seeking an adjudication that the specific subdivision regulations pursuant to which the defendant purported to act, are invalid and unconstitutional under the Fourteenth Amendment of the United States Constitution and Article First, Section 10 of the Connecticut Constitution. On the plaintiff's motion, the two cases were consolidated for trial pursuant to P.B. Section 84A.
At trial, the plaintiff testified that she was the owner of the property in question at all times pertinent to this appeal and so the court finds that the plaintiff is aggrieved. Bossert v. Norwalk, 157 Conn. 279, 285 (1986); Goldfeld v. Planning and Zoning Commission, 3 Conn. App. 172 (1985).
Before addressing the plaintiff's claims, consideration must be given to the defendant's threshold argument that because these cases were consolidated for trial, they have become one proceeding and therefore the plaintiff is barred from attacking the constitutionality of the regulations in question under the rule of such cases as Society for Savings v. Chestnut Estates, Inc.,176 Conn. 363, 567 (1979).
Practice Book Section 84A provides as follows: "Whenever there are two or more separate actions that should be tried together, the court may, upon the motion of any party or upon its own motion, order that the cases be consolidated for trial. The court files in any actions consolidated pursuant to this section shall be maintained as separate files and all documents submitted by counsel or the parties shall bear only the docket number and case title of the file in which it is to be filed".
This rule makes it clear that consolidation does not cause the CT Page 2038 two cases to lose their separate identity as they are consolidated only for trial. The balance of the rule is likewise clear that the cases retain their original character for all purposes. In fact, this very procedure was approved by our Supreme Court in Bombero v. Planning and Zoning Commission 218 Conn. 737, 745 (1991) wherein the court stated: "Where, as here, the plaintiffs combined constitutional and unconstitutional attacks on the regulation, it serves judicial economy to require that the non constitutional claims of invalidity be presented to the court in the same action as the constitutional claims. It makes little procedural sense to balkanize the plaintiffs' challenges between the declaratory judgment action and an appeal. Since the declaratory judgment action can accommodate both the constitutional and non constitutional claims, whereas the statutory appeal may not, judicial economy suggests that the declaratory action be the proper vehicle." This claim of the defendant is without merit.
In a proceeding such as this where there is a two pronged attack mounted against the disapproval of a subdivision, one conventional and the other constitutional, the court is bound to abstain from consideration of the constitutional issues raised in the declaratory judgment action if the plaintiff is entitled to relief on the issues raised in the appeal. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 720 (1988); State v. Zach,198 Conn. 168, 177 (1985). This is especially true here where resolution of the conventional issues in the plaintiff's favor will transform the constitutional claims from an "as applied" to a "facial attack" on the regulations in question, Bombero v. Planning and Zoning Commission, supra at 743; Connecticut Health Facilities. Inc. v. Zoning Board of Appeals of Stamford, 29 Conn. App. 1
(1992), because in prevailing on the conventional issues no facts remain which need be applied to the legislation under attack. In the absence of weighty countervailing circumstances facial invalidation of a regulation is improvident. Motor Vehicle Manufacturers Assn. of the USA. Inc. v. O'Neill, 203 Conn. 63
(1987). Except with respect to first amendment freedoms such an exercise would be improper. Steven Reney Memorial Fund v. Old Saybrook, 4 Conn. App. 111 (1985).
Proceeding now to take up the issues raised in the subdivision appeal, a brief recitation of the facts is necessary. At the time the plaintiff applied for resubdivision she already had a legally approved four lot subdivision. In her application, she proposed to borrow land from the rear of each lot in order to create a fifth lot along the rear boundary line (Parcel G-1). In doing so, the CT Page 2039 lot was to have its zoning frontage on Tally Ho Lane over which it had no legal access, and was to have its actual access over a driveway from High Ridge Road, which was to be shared in common with two other lots in the subdivision. In terms of adjustment to lot lines the plan called for elimination (straightening) of an irregular line at the northerly boundary of Plot E-2 and creation of a new hatchet shaped lot (G-1). At the public hearing the City Planning and Zoning Director, Jon Smith, testified that the plan was in compliance with the zoning regulations. Acting pursuant to Section 3.4 of the regulations the Stamford Traffic Department and the Environmental Protection Board offered no objection to the proposal.
At the Board's meeting of June 25, 1991 each board member expressed his views with regard to a variety of concerns, including: claimed commercial type uses being conducted on the High Ridge Road frontage, excessive black top and parking of vehicles, the impact on open space and technical compliance with the zoning regulations. What seemed to disturb the Board most seriously was the belief that the plaintiff should not be allowed to serve parcel G-1 by way of a common driveway from High Ridge Road because this would make it an "accessway lot" which the zoning regulations do not permit in the R-10 Zone.
Notwithstanding these individualized statements and its failure to adopt a formal resolution explicitly incorporating its reasons, on June 26, 1991 the Board notified the plaintiff that it had denied her application on June 25 for "the reason that the Board found the proposed subdivision to be in conflict with Stamford Subdivision Regulations, Section 3.6.3 and 4.1 as to the health safety and welfare of existing and future residents of the neighborhood, and Section 5.2.5 as to lot configuration and orientation of the proposed dwelling".
In the subdivision appeal the plaintiff's complaint can be broken down into two parts: (1) that the board disregarded its own subdivision regulations and disapproved the application for reasons not permitted by the regulations, and (2) that the board's act was arbitrary and illegal because the particular regulations upon which the board relied are "unlawfully vague, obscure, imprecise and do not reasonably identify the criteria to be evaluated by the board in their enforcement". These are essentially the same allegations which the plaintiff makes in her declaratory judgment action.
Any analysis of the subdivision appeal must begin with the CT Page 2040 application of certain principles which have become fundamental to land use appeals.
While there appears to be some disagreement between the reasons articulated by individual members of the board at its meeting of June 25 and the reasons given in its letter of June 26, the court is limited in its inquiry to consider only the official collective statement of the board and may not go behind it to assess other reasons that might have influenced individual members of the board DeMaria v. Planning and Zoning Commission, 159 Conn. 534,541 (1970). Consequently, the defendant' invitation to consider specifically the claim that in actuality Parcel G-1 is an illegal accessway lot cannot be accepted.
The next fundamental principle which governs the analysis is the mandate to examine the reasons actually and collectively enunciated by the board to determine whether any one of them is sufficient to support the board's action, Crescent Development Corporation v. Planning Commission, 148 Conn. 145, 150 (1961) in terms of (a) its being authorized by the subdivision regulations and (b) that it is reasonably supported by the record. Westport v. Norwalk, 167 Conn. 151, 161 (1974).
The first reason assigned by the board relies on two sections of the regulations which are very similar in their language but are identical in that they permit the board to engage in an investigation of the effect of the subdivision on "the general health, safety and welfare of the existing residents of the neighborhood and/or future residents of the proposed subdivision". Except for the fact that both regulations look to protect future residents of the proposed subdivision and not future residents of the neighborhood, this reason is on its face authorized by the regulations. But this does not end the inquiry.
The authority of a planning board to disapprove a subdivision on the basis of a generalized finding that the subdivision would have an adverse impact on the health, safety and welfare of its neighbors, without specifying more, has recently come under heightened scrutiny in our courts. Sowin v. Planning and Zoning Commission, 23 Conn. App. 370 (1990); Ghent v. Planning and Zoning Commission, 219 Conn. 511 (1991); Grace Community Church v. Planning and Zoning Commission, 42 Conn. Sup. 256 (1992). It is undoubtedly true that the function of subdivision review is not performed in a straight jacket. "As the complexity of economic and governmental conditions increases, the modern tendency is liberal CT Page 2041 in approving broad regulatory standards so as to facilitate the operational function of administrative boards or commissions". Forest Construction Co. v. Planning and Zoning Commission,155 Conn. 669, 679 (1967). On the other hand, the criteria contained in the board's regulations must be "as reasonably precise as the subject matter requires and . . . reasonably adequate and sufficient to guide the [commission] and to enable those affected to know their rights and obligations". Id. at 680". No one standard could be adopted to cover adequately all future cases. Judgment and experience must be applied in each instance, and an administrative agency may act upon its own knowledge and observation as well as the evidence presented at the hearing". Blakeman v. Planning and Zoning Commission, 152 Conn. 303, 307
(1965).
The defendant embellishes upon these principles and urges that when a planning board acts on a proposal for a resubdivision the nature of its actions is not administrative but quasi-judicial and therefore the board enjoys a broader discretion. This argument is based on the statutory requirement (General Statutes Sec. 8-26) that "no plan of resubdivision shall be acted upon . . . without a public hearing" and that a public hearing per force transforms an administrative act into one which is quasi-judicial, and thus apparently, the board would be entitled to avail itself of the more liberal parameters that would, for instance, govern its review of special permits. See, Barbarino Realty and Development Corp. v. Planning and Zoning Commission, 222 Conn. 607, 620 (1992) in which our Supreme Court approved the exercise of broad discretion in the context of special permit review pursuant to regulations which constituted broad legislative statements.
The distinction between the two functions (subdivision versus resubdivision) made by the defendant is inappropriate for two reasons. First, both the Stamford City Charter (Sec. C6-30-15) and the subdivision regulations themselves (Section 3.6.1) mandate that all subdivision plans, except two lot subdivisions, be given a a public hearing so that insofar as the nature of the function is concerned there is no difference in Stamford. Secondly, none of the resubdivision cases cited by the defendant or found by the court either countenance or adumbrate such a distinction. In Sowin v. Planning and Zoning Commission, supra, the planning commission actually held a public hearing on the plaintiff's application for subdivision approval and while the hearing may, for the sake of argument, have been quasi-judicial in nature, it did not make any difference to the court in reaching its result. Likewise, in CT Page 2042 Blakeman v. Planning and Zoning Commission, supra at 306, our Supreme Court stated that "in exercising its function of approving or disapproving a resubdivision plan, the defendant acted in an administrative capacity" (emphasis supplied).
Returning now to the analysis of the reasons assigned by the board, the fact that the first reason is virtually a verbatim quote of the language of Sections 3.6.3 and 4.1 does not by itself lend validity to the reason. As stated earlier in this opinion the court will not indulge in a constitutional exercise concerning subdivision regulations when there is no need to do so. On the other hand, the validity of the defendant's reason depends in large measure upon the precision of the regulation upon which it is based. In other words, there must be a relationship between the specificity of the words used in the reason and the particular regulation upon which the reason is based so that the vaguer the regulation the more precise must the reason be.
In comparing the words of the assigned reason with the language of Sections 3.6.3 and 4.1 it is evident that the concept of general health, safety and welfare of residents stands alone in Section 3.6.3 but is coupled with "any other feature likely to be harmful to" the health, safety and welfare in Section 4.1. Thus, the reason is no more specific than the regulation as it fails to articulate what it is about the resubdivision plan that the board believes to be harmful.
Both the reason and the regulation involved here are even less precise than the special permit regulation involved in Grace Community Church v. Planning and Zoning Commission, supra, in which this court (Fuller, J.) observed that a reason given in accordance with a regulation that required the commission to find that "[no] conditions will be created which will adversely affect traffic" was too inadequate a standard to prevent approval of the special permit. It is noted that this came in the context of special permit, not subdivision review. Just as in Grace Community Church, what will "be harmful to the health, safety and welfare of the neighbors" is a vague and imprecise concept susceptible of several interpretations. Sections 3.6.3 and 4.1 stand on no firmer ground than did the regulation invalidated in Sonn v. Planning and Zoning Commission, 172 Conn. 156 (1976), or Ghent v. Planning and Zoning Commission, supra.
As stated above, while the record reflects numerous concerns expressed by individual board members there is nothing in the CT Page 2043 record which takes this aspect of the case out of the rule announced by the Appellate Court in Sowin v. Planning and Zoning Commission, supra. "General policy statements gleaned from subdivision regulations regarding compliance with public health and safety regulations do not provide a sufficient basis for rejection of a subdivision permit." Id. at 376. Given the foregoing scrutiny the first reason cannot stand.
The second reason assigned by the board is that the configuration of the lot and orientation of the proposed dwelling are in conflict with Section 5.2.5. Section 5.2.5 is slightly more specific as it purports to regulate lot shape and house orientation. As to the former, the regulation provides that "so-called `tortured' lot lines which are erratic in nature having extreme angles uncommon in the standard subdivision and designed primarily to circumvent the standards of the applicable zoning district will not be permitted". The plaintiff makes a wholesale assault on the grounds that the terms (i) "torture", (ii) "lot lines erratic in nature", (iii) "extreme angles", and (iv) "uncommon in the standard subdivision" are all too imprecise and indefinite to allow denial of the permit on these grounds. Dealing with these terms in order, the analysis ends with the first word, "torture".
"In construing [the] ordinance, the court must be guided by the accepted meaning of the words found in the provision." Steven Reney Memorial Fund v. Old Saybrook, supra at 114. In the context used here, the term "torture" is defined as "to twist or wrench out of shape; to distort, warp". Webster's Ninth New Collegiate Dictionary at 1246 (1987). Resort to the common and accepted meaning of a word is appropriate when the regulations themselves, as in this case, fail to define the term. The record discloses and the Planning Director, Jon Smith, testified before the Board that the resubdivision did not in fact "torture" lot lines. Mr. Smith gave the Board his rationale for this position. First, he stated that the exterior lot line that the Board was evaluating under the "torture" standard was a pre-existing lot line of record which was in its present configuration when the plaintiff bought the land and was previously approved by the board at the time that it approved the four lot subdivision. Such a belief is consistent with the definition of the term recited above since both the definition and the regulation imply some volitional act on the part of the subdivider to create the line. Such was not the case here. Secondly, Mr. Smith stated that the new configuration in fact eliminates a tortured lot line that formerly existed between plots CT Page 2044 E-1 and E-2 by squaring off the line which the subdivider had previously created.
Although the parties devoted great time and effort to a debate over what constitutes "erratic in nature", "extreme angles" and "standard subdivision" the court need not reach these issues because the line in dispute is not tortured in the first place.
The second part of the reason relates to house orientation. Apparently this results from the Planning Director's perception that the plaintiff proposes to build her house with such orientation that one side of the house will directly face Tally Ho Lane. Yet there is nothing in either the resubdivision before the Board or in the briefs of counsel which show orientation of the house as envisioned by the Board. Item 26, the resubdivision map merely shows the shape of a "proposed dwelling". Nothing on the map indicates which side is to be the front of the house.
The defendant argues that the regulation calls for the house to be "parallel" to the street. Webster's New World Dictionary, Second College Edition at 1030 (1979) defines the term "parallel" as extending in the same direction and at the same distance apart at every point so as never to meet. Under the regulation, as long as one side of the house is parallel to the street it does not matter whether this side is in fact the front of the house. Item 26 shows a proposed house location wherein the line facing the street is roughly parallel to the street. The regulation does not, as do regulations in other municipalities, require that the longest side of the house be parallel to the street. If that were the case, the reason given might have some plausibility. While the interpretation of a subdivision regulation by a planning board is entitled to some deference, the correct interpretation of the regulation is ultimately for the court. Thorne v. Zoning Board of Appeals, 156 Conn. 620 (1968).
The defendant attempts to justify the Board's action by tying in the house orientation to the fact the Parcel G-1 will use a common driveway as access to and from High Ridge Road. Both during the course of the trial and in its briefing the defendant has attempted to characterize this lot as an illegal accessway lot, having only technical frontage. The defendant concludes therefore that because the lot has only technical frontage, the lot lines are tortured. While it is clear that this concern captured the attention of the board both at the public hearing and at its meeting of June 25, the Board did not assign this as a reason for CT Page 2045 disapproval nor could it have properly done so for in the words of the Planning Director, the lot has lawful frontage on Tally Ho Lane.
For the reasons stated earlier in this opinion the court need not address the constitutional issues that grow out of the language used in Section 5.2.5. Such a determination will have to be left to another day.
For the foregoing reasons the court concludes that the defendant acted illegally, arbitrarily and in abuse of its discretion in denying the application for resubdivision approval. Accordingly, the appeal is sustained. In view of the fact that the plaintiff has received complete relief in the appeal, there is no need for an adjudication in the declaratory judgment action.
MOTTOLESE, J.