JACKSON, INC. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF AVON
(AC 30401)

Bishop, Lavine and Dupont, Js.

Argued September 15—officially released December 1, 2009

*Robert A. Fuller*, with whom, on the brief, was *Stuart D. Rosen*, for the appellant (plaintiff).

*Michael A. Zizka*, with whom, on the brief, was *Lana M. Glovach*, for the appellee (defendant).

BISHOP, J. The plaintiff, Jackson, Inc., appeals from the judgment of the trial court dismissing its appeal from the decision of the planning and zoning commission of the town of Avon (commission). On appeal, the plaintiff claims that the court improperly determined that the commission had the authority to deny its subdivision application based only on one general provision in the town's subdivision regulations when the plaintiff had complied with all of the specific provisions in the regulations. The plaintiff further contends that the court improperly concluded that there was substantial evidence in the record to support the commission's reasons for the denial of the application. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to the resolution of the plaintiff's appeal. The plaintiff filed an application with the commission seeking to subdivide a 155 acre parcel of land for residential uses. The original application proposed 110 building lots, but that number was later reduced to ninety-seven during the application process. The land consisted of large areas of wetlands, steep slopes and rocky ledges. The commission denied the plaintiff's application on the ground that it did not comply with § 1.11 of the Avon subdivision regulations (subdivision regulations), entitled "Character of the Land," concluding essentially that the topography of the

land rendered it unsuitable for the plaintiff's proposal.[1] Thereafter, the plaintiff appealed to the Superior Court. The court dismissed the plaintiff's appeal, stating that the commission's decision was not unreasonable, arbitrary or illegal and that it was supported by substantial evidence in the record. This appeal followed.

The plaintiff first claims that the court improperly concluded that the commission was entitled to deny the application solely on the basis of a general provision in the subdivision regulations, namely, § 1.11, when the plaintiff had complied with all of the specific provisions

---

[1] Specifically, the commission stated that it denied the plaintiff's application because "[s]ection 1.11 of the subdivision regulations, Character of the Land, has not been met:

"CHARACTER OF THE LAND—Land which the Commission finds to be unsuitable for subdivision or development, due to flooding, improper drainage, steep slopes, rock formations, adverse earth formations or topography, utility easements, or other features will reasonably be harmful to the safety, health, and general welfare of the present or future inhabitants of the subdivision and/or its surrounding areas, shall not be subdivided or developed unless adequate methods are formulated by the developer and approved by the Commission, upon recommendation of the Town Engineer and Director of Health, to solve the problems created by the unsuitable land conditions. Such land shall be set aside for uses as shall not involve such a danger.

"The number of requested building parcels and road configurations result in too great of a disturbance to the site with approximately 800,000 [cubic yards] of cuts and fills with a surplus of 65,000 [cubic yards] of material. The resulting blasting, crushing, and transporting of material may be reasonably harmful to the present inhabitants of the surrounding areas. Additionally, the intense development of similar sites within the Huckleberry Hill area have demonstrated the ongoing erosion problems which impact future inhabitants of the developments and surrounding areas.

"The proposed development parcel should be reasonably developed with a road circulation pattern and individual building parcels configured to fit the topography and individual home styles also fitting the topography of the building parcels. A significant reduction in the number of building lots may result in a plan that does not require a road circulation pattern with the required connection to the Craigemore Circle/Lovely Street intersection. The public safety concerns may be addressed with individual residential fire suppression systems and the connection of Princeton Drive and the westerly future extension of the Wood Creek Road temporary cul-de-sac."

in the zoning and subdivision regulations.[2] As part of this claim, the plaintiff asserts that § 1.11 of the subdivision regulations is so broad and vague that its application yields unbridled authority to the commission. Because the plaintiff's claim presents a question of law, our review is plenary. See *Jewett City Savings Bank* v. *Franklin*, 280 Conn. 274, 278, 907 A.2d 67 (2006).

Section 1.11 of the subdivision regulations provides: "Land which the Commission finds to be unsuitable for subdivision or development, due to flooding, improper drainage, steep slopes, rock formations, adverse earth formations or topography, utility easements, or other features will reasonably be harmful to the safety, health, and general welfare of the present or future inhabitants of the subdivision and/or its surrounding areas, shall not be subdivided or developed unless adequate methods are formulated by the developer and approved by the Commission, upon recommendation of the Town Engineer and Director of Health, to solve the problems created by the unsuitable land conditions. Such land shall be set aside for uses as shall not involve such a danger." In dismissing the plaintiff's appeal, the court concluded that "the commission was dealing with a proposed subdivision on land that was unsuitable for subdivision development. The criteria for determining unsuitable land are set forth in § 1.11 of the [subdivision] regulations as land that is wet, rocky, steep and of adverse topography. Those criteria are objective and detailed. It is impossible or impractical to draft more precise standards that apply to such land. The many variables involved clearly preclude it. Section 1.11 recognizes that when a subdivision application is proposed on such a difficult land, the only practical way to deal with it is for the developer to present a plan that the

---

[2] The plaintiff does not claim that the commission did not have the authority to enact § 1.11 of the subdivision regulations.

commission in its best judgment can approve. Concededly, some discretion is left to the commission, but under the circumstances it is necessary. There is the possibility of arbitrariness. But the situation of such topography prevents no fixed or more detailed criteria to apply. . . . Thus . . . § 1.11 of the . . . subdivision regulations is reasonably precise and sufficient to guide both the plaintiff and the commission, and can be validly applied in this case." (Citation omitted.)

We are aware, of course, that "[t]he subdivision regulations upon which the commission, acting administratively, should rule must contain known and fixed standards applying to all cases of a like nature . . . . The standard for determining the adequacy of subdivision regulations [therefore] is whether they are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . . Although some standards may be general, the regulation must be reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Zoning Commission*, 259 Conn. 402, 429, 788 A.2d 1239 (2002).

As the commission points out, our Supreme Court confronted a similar argument in *Forest Construction Co.* v. *Planning & Zoning Commission*, 155 Conn. 669, 236 A.2d 917 (1967). In *Forest Construction Co.*, the town planning and zoning commission denied the subdivision application on the ground that the applicant proposed only one route of access into and out of the subdivision, thereby creating potential traffic hazards. Id., 673. In reaching its conclusion, the commission relied on a subdivision regulation providing that "[t]he

commission reserves the right to reject applications for the development of land when such development might be hazardous to the health and welfare of the community." (Internal quotation marks omitted.) Id., 675. Our Supreme Court held: "It is unrealistic to demand detailed standards which are impracticable or impossible. . . . As the complexity of economic and governmental conditions increases, the modern tendency is liberal in approving broad regulatory standards so as to facilitate the operational functions of administrative boards or commissions. It is apparent that the regulations are within the purview of the enabling act, and the criteria contained in the commission's regulations are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . . Although some of the standards may be general in their terms, they are reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases." (Citations omitted.) Id., 679–80.

Similarly, in *Blakeman* v. *Planning Commission*, 152 Conn. 303, 206 A.2d 425 (1965), the town planning commission denied a resubdivision application on the ground that the intersection of the proposed road with the existing road would not be safe because the roads would intersect on a slope, thus providing a " 'poor sight distance,' " and also because problems would arise with surface drainage on the existing road. Id., 305. The regulation relied on by the commission required that streets be designed to provide " 'safe and convenient' " access to proposed lots and a safe system for traffic. Id. The Supreme Court held: "The conditions which might make an intersection unsafe are many and varied.

No one standard could ever be adopted to cover adequately all future cases. Judgment and experience must be applied in each instance, and an administrative agency such as the defendant may act upon its own knowledge and observation, as well as the evidence presented to it at a hearing." Id., 307.

Here, it is clear that the intent of § 1.11 is to ensure that proper provisions be made for flooding, drainage and soil erosion, the extent of which depend on the topographic character of the land sought to be developed. It would be impractical to attempt to establish regulations that would address every possible concern regarding topographic or other natural conditions of land. Because the appropriate measures to be taken will necessarily vary with the character of the land subject to the subdivision application, we believe that the criteria contained in § 1.11 are "as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 93, 368 A.2d 24 (1976). Accordingly, we conclude that the failure to comply with § 1.11 is a sufficient basis for the denial of a subdivision application.

We next consider whether the evidence before the commission adequately supports the reasons given for its decision. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision

reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Loring* v. *Planning & Zoning Commission*, 287 Conn. 746, 756, 950 A.2d 494 (2008). "[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission*, 293 Conn. 93, 114, 977 A.2d 127 (2009).

Here, the record amply supports the commission's decision. The commission heard evidence that more than 400,000 cubic yards of cuts and 400,000 cubic yards of fill would have to be moved about the subject property. The commission was also presented with evidence that a substantial amount of blasting and regrading would be required to develop the site. The plaintiff contends that this evidence, however, is not significant because it is not atypical, and its proposal is similar to other area subdivisions that the commission had approved. In regard to nearby sites, however, the commission noted that it had received reports of problems in those subdivisions related to drainage and erosion. Although § 1.11 does not contain specific proscriptions as to amounts of cutting, blasting, regrading or earth removal that would be regarded as excessive, the commission members are entitled to rely on their expertise and judgment concerning matters within their knowledge, particularly drawing on past experience for guidance. See *Lee & Lamont Realty* v. *Planning & Zoning*

*Commission*, 112 Conn. App. 484, 488, 963 A.2d 98 (2009). On the basis of the foregoing and our thorough examination of the record, we conclude that the denial of the plaintiff's subdivision application was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.