FERNDALE DAIRY, INC., ET AL. *v.* ZONING COMMISSION
OF THE TOWN OF BERLIN

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued January 4—decided March 14, 1961

*Valentine J. Sacco,* with whom were *Jerome I.
Walsh* and, on the brief, *George H. Hamlin,* for the
appellants (plaintiffs).

*James F. Dawson,* for the appellee (defendant).

MURPHY, J. The plaintiffs are the owners of property at the apex of a triangle formed by the junction of Chamberlain Highway and High Road in the town of Berlin. The plaintiffs' property comprises 9.63 acres and is in a residence A zone, the highest zoning classification in the town. Berlin Zoning Ordinance § 1 (1954). In 1958, the plaintiffs filed an amended petition with the defendant for a change of the zoning of their property and that of the adjoining Alling property, 1.4 acres, to business. The Alling property, together with a strip of the plaintiffs' property, forms the base of the triangle. The petition was denied. Upon appeal to the Court of Common Pleas, the action of the defendant was sustained. The plaintiffs have appealed to this court.

The tip of the plaintiffs' property is occupied by a gasoline station which is a nonconforming use, since it was in operation prior to the adoption of zoning in Berlin. Land on the west side of Chamberlain Highway, opposite the upper section of the triangle, is zoned for business. This stretch is 830 feet in length and is occupied by a milk distributing plant and dairy bar. All the other property in the immediate vicinity is zoned for residential use.

At the public hearing conducted by the defendant on October 8, 1958, the plaintiffs offered the testimony of a market research consultant and that of a landscape architect and town planner. The president of the named plaintiff also testified. The gist of their testimony was that the land is a large swampy area surrounded by heavily traveled roads; that the water level is rather high; and that the bottom land is silty and spongy and it would be

unpractical to use it for building purposes without a pile type of foundation. Their conclusion was that the land was unsuitable for residential use but could be developed into a neighborhood shopping center and that its highest and best use was for business. Practically all the owners of property in the neighborhood, including the Allings and the owners of two parcels adjoining the plaintiffs' property on the base of the triangle, opposed the change of zone. The owners of the two parcels had originally sought a change of zone for their properties and had joined with the plaintiffs in the petition, but they withdrew their request before the hearing. The amended petition was thereupon filed. The opponents argued that additional shopping facilities in the vicinity were not needed; that only the plaintiffs would benefit by the change; that a school was to be constructed nearby to which the pupils would travel on foot; that traffic, additional to the heavy traffic now on the surrounding roads, would be a hazard; and that proper drainage of the area presented a serious problem. They also pointed out that the site had been considered for a park and that it was not in the public interest to change the zoning of it.

Berlin also has a planning commission; it adopted a generalized land-use plan for the town on June 2, 1958. This plan called for four planned business zones, one of which would be on Chamberlain Highway presumably in the general vicinity of the plaintiffs' property. The planning commission held a meeting two days before the public hearing on the plaintiffs' petition but did not define a planned business zone or develop specific recommendations for the plaintiffs' location.

In executive session, two of the members of the defendant indicated their belief that the area was

suitable for either residential or business use. The members of the defendant voted unanimously to deny without prejudice the plaintiffs' request for a change of zone until the planning commission defined the planned business zone. This action was in accord with the suggestion of the chairman of the planning commission, made at the public hearing.

Upon the record before it, the defendant could have decided the plaintiffs' petition upon its merits without the ameliorating effect of the "without prejudice" proviso. The controlling considerations in determining what action should be taken on a petition for a zoning change are the good of the community as a whole, and not the benefit to a particular individual or group of individuals, and whether the change falls within the requirements of a comprehensive plan for the use and development of property in the municipality or a large part of it. *Kuehne* v. *Town Council,* 136 Conn. 452, 461, 72 A.2d 474. The determination of what the public interest required was within the discretion of the defendant; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597; and the trial court will not interfere with the decision of a zoning commission unless it is shown that its action was arbitrary, illegal or unreasonable. *Florentine* v. *Darien,* 142 Conn. 415, 423, 115 A.2d 328. The burden of proving that was upon the plaintiffs. *Longo* v. *Board of Zoning Appeals,* 143 Conn. 395, 399, 122 A.2d 784.

Considerable emphasis was laid by the plaintiffs, both in brief and argument, on the claim that the action of the defendant in denying the petition without prejudice until the planning commission defined the planned business zone amounted to an abdication by the defendant and a surrender of its function to the planning commission. We do not share

this view. It appears to us that the defendant took the action it did in order to permit the plaintiffs to renew their petition without waiting twelve months in accordance with General Statutes § 8-3. The action of the defendant in denying an application without prejudice should not be encouraged. In a proper case it could conceivably raise a question whether the matter is appealable. See *Varanelli* v. *Luddy*, 130 Conn. 74, 80, 32 A.2d 61. The action of the defendant is reviewed in the light of the record as it was developed before the defendant. In *Levinsky* v. *Zoning Commission*, 144 Conn. 117, 122, 127 A.2d 822, we pointed out in a general manner the difference in the functions of zoning and planning commissions. That co-ordination between the two separate bodies would be desirable, as well as beneficial to the municipality, is indicated by the action of the legislature in providing that the functions of both commissions may be exercised by a single commission. General Statutes § 8-4a. Municipal planning is designed to promote, with the greatest efficiency and economy, the co-ordinated development of the municipality and the general welfare and prosperity of its people. The aim of municipal planning is to secure the uniform and harmonious growth of villages, towns and cities. Zoning is concerned primarily with the use of property. *Kiska* v. *Skrensky*, 145 Conn. 28, 32, 138 A.2d 523; *Purtill* v. *Town Plan & Zoning Commission*, 146 Conn. 570, 572, 153 A.2d 441. While the defendant could have acted independently of the planning commission, its approach to the problem indicates a sincere desire to give due consideration to the advisory suggestions to be found in the master plan. Error can hardly be predicated upon such a situation under the circumstances in this case. Attention is di-

rected to § 5 of Public Act No. 614 of the 1959 session, now General Statutes § 8-3a, which provides for referral to the planning commission of proposed zoning regulations, boundaries or changes thereof and for a report thereon before action is taken by the defendant. This provision emphasizes the legislative determination that co-operation between the two commissions should react to the benefit of the town.

There is no error.

In this opinion the other judges concurred.