WILLIAM KRAWSKI *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF SOUTH WINDSOR
(7942)

BORDEN, SPALLONE and O'CONNELL, Js.

Argued December 20, 1989—decision released May 4, 1990

*Richard M. Rittenband,* town attorney, with whom, on the brief, were *Ralph J. Alexander* and *Richard C. Willard,* for the appellant (defendant).

*Scott R. Chadwick,* for the appellee (plaintiff).

SPALLONE, J. The defendant commission appeals from the judgment of the trial court sustaining the plaintiff's appeal from the denial of his application for subdivision plan approval. The commission claims that the court erred in concluding that approval was unreasonably denied for reasons not based on subdivision regulations. We find error.

In April, 1987, the plaintiff sought the commission's approval for a five lot subdivision on property at Felt Road and Ridgefield Drive in South Windsor. At the public hearing, the commission noted that the slope of at least one lot exceeded town zoning limits. One lot had a slope of approximately 17 percent and was of such size that a house constructed on the lot would be in violation of § 5.1 of town zoning regulations requiring a 10,000 square foot contiguous building area with a slope

of less than 15 percent.[1] The plaintiff expressed an interest in retaining the slope to build a solar home, but stated that he would regrade the property if requested to do so. His engineer stated that the lot could be brought into compliance with the zoning regulations with relatively minor regrading. The town engineer stated that the slope could be stabilized and protected from water erosion, adding that the commission could address the issue of the lot gradient upon a subsequent application for a building permit.

The commission also noted that it had previously reviewed a "concept plan" for this parcel and had indicated that it would approve a subdivision of no more than three lots. Although the plaintiff was the owner of the parcel, he had not been involved in presenting the prior application or in submitting the concept plan. The commission indicated that, nevertheless, it expected the plaintiff's current application to reflect the prior limitation.

The commission disapproved the subdivision application on the grounds that it failed to conform with either the zoning regulations or the approved concept plan. On the plaintiff's appeal, the trial court concluded that the plaintiff was not bound by conditions set on a previous submission and that town subdivision regulations do not include zoning regulations. Moreover, the court concluded that such zoning regulations, even if applicable, did not justify the disapproval of any more than the one lot of excessive grade and so the disapproval of the entire subdivision was unreasonable and arbitrary. The court, therefore, sustained the plaintiff's appeal and this appeal followed.

[1] Sections 5.1.a and 5.3.b of the South Windsor zoning regulations provide in pertinent part that "[e]ach approved residential lot shall contain a contiguous building area ('buildable' defined as exclusive of . . . areas with slopes at or in excess of 15%) of at least 10,000 square feet, into which a square of ninety feet by ninety feet (90′ by 90′) can be located, and on which the dwelling must be located."

The commission claims that it is empowered to consider applicable town zoning regulations in reviewing a subdivision application. We agree. Subdivision regulation is a planning function, and the defendant was sitting here as a planning commission. See *Vose* v. *Planning & Zoning Commission*, 171 Conn. 480, 483, 370 A.2d 1026 (1976); *Camm* v. *Hart*, 6 Conn. App. 284, 288, 504 A.2d 1388 (1986). Although planning and zoning are separate functions not to be interchanged; *Vose* v. *Planning & Zoning Commission*, supra; coordination between the functions is desirable and beneficial to the municipality. *Ferndale Dairy, Inc.* v. *Zoning Commission*, 148 Conn. 172, 176, 169 A.2d 268 (1961).

Town subdivision regulations incorporate zoning regulations by reference. Section 2.1 of the town's requirements for the subdivision of land states in pertinent part that "[a]ll portions of any subdivision shall conform to . . . the Town Zoning Regulations . . . ." The requirement that a subdivision plan comply with zoning regulations "is mirrored in an even more stringently drawn similar requirement in General Statutes § 8-26." *Federico* v. *Planning & Zoning Commission*, 5 Conn. App. 509, 514, 500 A.2d 576 (1985). Section 8-26, which concerns approval of subdivision applications, provides that "nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations." We conclude that the trial court erred in holding that town zoning regulations may not be the basis for subdivision planning decisions.

The commission, however, does not have unbridled discretion to use a violation of a zoning regulation as the basis for disapproving a subdivision application. "Generally, it is the function of a zoning board or commission to decide 'within prescribed limits and consist-

ent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . .' " *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988). General Statutes § 8-26 bars subdivision plans that conflict with *applicable* regulations. *Federico* v. *Planning & Zoning Commission,* supra, 515.

A zoning commission is endowed with liberal discretion in applying the law to the facts of a case; id.; and we must be cautious about disturbing commission decisions on review. *Gagnon* v. *Municipal Planning Commission,* 10 Conn. App. 54, 56–57, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521 (1987). The commission here has determined that the zoning regulation governing slope limitations is applicable to its review of the plaintiff's plan and that the slope of one proposed lot exceeds those limitations. If the commission has reasonably and fairly exercised its honest judgment after a full hearing, we must uphold its decision unless unreasonable, arbitrary or illegal. Id., 57.

The commission here has not arbitrarily reached out for an inapplicable zoning regulation as a basis for its denial of the plaintiff's subdivision application. The slope limitation of § 5.1 of the town zoning regulations is explicitly made applicable to municipal planning by the town's subdivision regulations. Pursuant to § 2.1 of these subdivision regulations, subdivisions are to be "designed, planned, and constructed in conformance with these regulations and the provisions of Sections 5.1 and 5.2 [for conventional subdivisions or Section 5.3 for open space subdivisions] of the Zoning Regulations of the Town."[2] The subdivision regulations spe-

[2] Although the plaintiff submitted an application for an open space subdivision that should conform to § 5.3 of the town zoning regulations, the commission references § 5.1, which regulates conventional subdivisions, as

cifically direct the commission to review the slope grade limitation and the defendant here properly has done so.

The plaintiff argues that the commission impermissibly confused its planning and zoning functions by denying the subdivision application because of a merely potential violation in the use of the land. The gist of the plaintiff's argument is that the commission could not validly base a planning decision on a zoning regulation that is only prospectively violated. We agree with the plaintiff that speculative violations may not be the basis of commission decisions and look to the guidelines enunciated in *Federico* v. *Planning & Zoning Commission,* supra, to decide whether the commission correctly determined that this subdivision application contains an existing violation of the town zoning regulations.

In *Federico* v. *Planning & Zoning Commission,* supra, 514–15, we concluded that a planning commission had mistakenly relied upon speculative testimony as to the future use of a proposed lot to find zoning violations. These violations of frontage and yard size zoning requirements would occur, if ever, only when a subsequent building permit application positioned a residence on the site. Id. A commission may legally base subdivision application denials on zoning violations "inherent in the plan itself as submitted" but not on those that are "entirely speculative." Id. A subdivision plan that, as submitted, complies with town zoning regulations should not be disapproved on merely "inchoate" violations. Id.

In this case, the zoning violations cannot be considered speculative or inchoate. It is not the proposed use of the lot that violates the zoning regulations but rather

the basis for its disapproval of the plan. Conventional and open space plans are merely alternative methods of subdivision design and §§ 5.1.a and 5.3.b contain identical language on the permissible slope percentage. See footnote 1, supra.

its existing topographical features. The zoning violations were not brought to the commission's attention by speculative testimony, as in *Federico;* these violations are apparent on the face of the submitted subdivision plan. There was no need for the commission to wait for an application for a building permit in order to determine whether a home could be positioned on the lot in conformity with zoning regulations. The town zoning regulations specify that each approved lot contain a ninety foot by ninety foot square of buildable area "on which the dwelling *must* be located." (Emphasis added.) See footnote 2, supra (concerning § 5.1.a). Given the size and slope of the lot, it would be physically impossible to site a conforming residence on the parcel, no matter how the building plans were drawn.

The plaintiff next argues that the trial court correctly found that the denial of the entire subdivision plan on the basis of one nonconforming lot was unreasonable and arbitrary. We do not agree. The commission acted within its statutory power to disapprove the entire plan. Pursuant to § 8-26 of the General Statutes, a commission "shall approve, modify and approve, or disapprove . . . application or maps and plans submitted . . . ." Once a zoning violation has been found on the face of a submitted plan, a commission may not approve the plan. *Reed* v. *Planning & Zoning Commission,* 208 Conn. 431, 433, 544 A.2d 1213 (1988); *Moscowitz* v. *Planning & Zoning Commission,* 16 Conn. App. 303, 309, 547 A.2d 569 (1988). A commission may, at its discretion, choose between disapproval or approval with conditions. *Moscowitz* v. *Planning & Zoning Commission,* supra. A commission may even, under appropriate conditions, waive certain requirements by a three-quarters vote. General Statutes § 8-26. The commission here decided to disapprove the subdivision plan and we will not substitute our own judgment. See *Goldfeld* v. *Planning & Zoning Commission,* 3 Conn. App. 172, 178, 486 A.2d 646 (1985).

The plaintiff further argues that a mandate to review a subdivision plan for conflicts with zoning regulations does not require a review for strict compliance with each and every zoning regulation. The plaintiff contends that his plan is in conformance with all major requirements of the zoning regulations, that the lot of excessive slope is only a minor noncompliance and that regrading would be more appropriately done when home construction is planned. We find no statutory support for a distinction between major and minor zoning violations. Nothing in the empowering statute or the town's regulations requires the commission to approve plans with even easily remedied nonconformities or to postpone the decision until the commission has before it an application for a building permit.

Moreover, the denial of this subdivision application is a decision appropriately taken at the planning stage of review when the plaintiff has available the widest range of options. The plaintiff here may choose regrading as the most cost effective way to bring this lot into conformity with the zoning regulations. He may alternatively elect to increase the size of the buildable area of the lot and retain the slope, especially in light of the commission's concerns on the record about the number of lots and driveways in the subdivision. The developer is better able than the zoning commission to weigh the costs and benefits of these options, and the ultimate decision is best made at the planning stage.

We conclude that the record in this case supports the commission's denial of the plaintiff's subdivision application on the basis of an inherent zoning violation. It is therefore unnecessary to consider the second reason for the denial based on the violation of the terms set in the prior subdivision review. The commission's action must be upheld if even one of the stated reasons is sufficient to support the decision. *Manchester* v. *Zoning Board of Appeals,* 18 Conn. App. 69, 72, 556 A.2d

1026, cert. denied, 212 Conn. 804, 561 A.2d 946 (1989); *Anastasiou* v. *Zoning Commission,* 6 Conn. App. 278, 284, 505 A.2d 8 (1986). The trial court was in error in concluding that the defendant acted improperly.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the appeal.

In this opinion O'CONNELL, J., concurred.

BORDEN, J., dissenting. I disagree with the majority that this subdivision plan violated an applicable zoning regulation. I would also reach the issue of whether the commission's second reason for denial of the plaintiff's application was valid, and agree with the trial court in its ruling on that issue as well.

Planning promotes the coordinated development of the municipality by ensuring its uniform and harmonious growth, while zoning regulates the use of land. *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 176, 169 A.2d 268 (1961); *Kiska* v. *Skrensky,* 145 Conn. 28, 32, 138 A.2d 523 (1958). Subdivision regulation is a part of the planning function. General Statutes §§ 8-25 and 8-26; *Vose* v. *Planning & Zoning Commission,* 171 Conn. 480, 483, 370 A.2d 1026 (1976).

Because of this bifurcation of functions, a planning commission, or, as here, a planning and zoning commission sitting as a planning commission, does not have unbridled discretion in disapproving subdivision applications based on any claimed violation of a zoning regulation. The proffered zoning regulation must be one that is *applicable* at the planning stage.

In *Federico* v. *Planning & Zoning Commission,* 5 Conn. App. 509, 500 A.2d 576 (1985), this court considered the effect of a local subdivision regulation requiring subdivision plans to comply with zoning regu-

lations. We required such a subdivision regulation to be read in conjunction with General Statutes § 8-26, under which a planning commission cannot approve any subdivision "which conflicts with *applicable* zoning regulations." (Emphasis added.) *Federico* established a framework for distinguishing those zoning regulations that are applicable when reviewing subdivision applications from those inchoate violations that may not be used by a planning commission at that stage of review. A planning commission may disapprove only those subdivision applications based on "zoning violations inherent in the plan itself as submitted and not potential use violations. Such requirements relate to subdivision plans that in and of themselves would violate zoning regulations. Examples of such conflicts include approval of a subdivision plan involving one-half acre lots in a one acre zone, or approval of a plan for a residential subdivision in an industrial area that prohibited such use. Inchoate violations involving the use of the lot in question, which may never occur, form no bases for a conclusion that a conflict exists between the approved subdivision plan and the zoning regulations so as to render the subdivision approval void." Id., 515.

The issue here, then, is whether the excessive slope under § 5.1.a is a zoning violation "inherent in the plan as submitted," or is an "[i]nchoate [violation] involving the use of the lot in question . . . ." Id. I conclude that under the facts of this case, the violation of § 5.1.a because of the 17 percent slope did not involve a zoning violation inherent in the subdivision plan itself.

The focus of § 5.1.a is on the slope of the land surrounding a dwelling to be built on the lot. If and when a building permit is sought—that is, when the *use* of the lot is sought—the owner will be required to comply with § 5.1.a. Where, as here, the slope of the lot

in question is not immutable,[1] such compliance cannot be determined until the applicant for a building permit proposes the location of the dwelling on the lot. Under § 5.1.a, the dwelling must be located in a ninety foot square within a contiguous area of at least 10,000 square feet having a slope of less than 15 percent. It is clear from this record that the potential slope violation was minor, and that the owner could regrade the lot at any time prior to seeking a building permit. In that event, there would not be a zoning violation. Thus, the purported violation of § 5.1.a was inchoate and may never occur.

The commission also claims that the court erred in concluding that the defendant's second reason for disapproval was invalid, namely, that it had already approved a previously submitted "concept plan" for a four lot subdivision on the parcel in question, rather than a five lot subdivision. I believe this claim to be without merit.

The commission relies on § 3.1.a of the subdivision regulations. That section provides in pertinent part: "It is *recommended* that the applicant prepare a set of preliminary plans for the initial meeting with the Commission. The purpose of the meeting is to afford the subdivider an *informal opportunity* to avail himself of the advice and assistance of the appropriate town offi-

---

[1] I cannot agree with the majority that a zoning violation cannot be considered speculative or inchoate simply because it involves a physically existing topographical feature. The majority treats the slope variance as if it were an immutable characteristic. Where, as here, the slope variance was minor, this may not necessarily be true. The majority fails to take cognizance of the fact that a slope violation can be corrected by regrading when a building permit is applied for. As a result, under the majority decision, the plaintiff would be forced to regrade the property at the time of subdivision approval rather than when he is ready to build. This result is unnecessary under our statutes, which distinctly separate the planning and zoning functions. Compare General Statutes §§ 8-1 through 8-13a (zoning) with General Statutes §§ 8-18 through 8-30a (planning).

cials before preparation of the final plans, and before formal application for subdivision is made." (Emphasis added.)

This section does no more than set forth a permissive procedure under which a subdivision applicant may obtain an informal review prior to the submission of a formal application. There is nothing to suggest that this preliminary planning procedure creates binding standards that must be followed when a final application is formally submitted.

Furthermore, there is nothing in General Statutes § 8-26 that provides for the use of binding preliminary or concept plans in the subdivision approval process. A planning commission can exercise only those powers expressly granted to it, and in determining whether it has the authority for a specified act, " 'we do not search for a statutory prohibition against such an [action]; rather, we must search for statutory authority for the action.' " (Citations omitted.) *Moscowitz* v. *Planning & Zoning Commission,* 16 Conn. App. 303, 308, 547 A.2d 569 (1988), quoting *Builders Service Corporation* v. *Planning & Zoning Commission,* 208 Conn. 267, 274–75, 545 A.2d 530 (1988).

I therefore would find no error.