[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the Court on an appeal from the decision of the Stonington Planning and Zoning Commission's (Commission) approval of the subdivision of Benjamin Orvedal (Orvedal).
On March 19, 1990, Orvedal filed an application for CT Page 426 an eleven-lot subdivision on a parcel of land containing 999,984 square feet. The subdivision lies in three different zoning districts: moderate density RM-20; low density RA-40; and rural residential zone RR-80. None of the zones have the same minimum lot area, or frontage and yard requirements.
In 1988, Orvedal submitted a subdivision application after receiving Inland Wetlands approval. The Commission denied the application because the proposed cul-de-sac exceeds the length requirement and also failed to provide for two emergency access points.
The plans were reworked by Orvedal to provide for a connection to Kidds Way (an adjoining subdivision). The Kidds Way subdivision had been approved earlier and a right of way for a future road into the Orvedal parcel was reserved. However, no slope rights were reserved which now necessitated that a retaining wall be built in order to locate the public road within the reserved right of way. The use of the retaining wall was recommended to Orvedal by the special counsel to the Commission.
The Inland Wetlands Commission approved the new application and a public hearing was then held by the Commission. On July 31, 1989, the Commission denied the application citing as one of its reasons the nonconformance of the proposed lot sizes to Section 2.02 of the Zoning Regulations. Section 2.02 addresses the method of calculating minimum lot requirements when lots are located in more than one zoning district.
Orvedal then sought assistance in clarification of Section 2.02 but the Town staff was unable to provide the necessary interpretation.
With redesigned plans, Orvedal once again received approval from Inland Wetlands with the qualification that a proposed "stub road" to an adjoining parcel be eliminated because it crossed over wetlands.
On March 19, 1990, Orvedal filed the application which is the subject of this appeal. The Commission staff then prepared a new submission checklist, an application checklist and solicited comments from other agencies. It then notified Orvedal of certain deficiencies in the application.
Orvedal supplied supplemental information to the Commission, including a letter from his land surveyor certifying that the plans conformed to the Zoning Regulations. CT Page 427
A second round of referrals to Town agencies and officials for comment then ensued and a final application checklist was drawn.
In the interim, the Commission adopted a policy which purported to clarify the interpretation and application of Section 2.02. The Town's administrative planner, using the new policy, prepared a calculation and opined that several lots did not conform to the new policy. A public hearing was then noticed and held.
At the hearing, the plaintiff's abutting landowners appeared in opposition to the subdivision application.
On July 5, 1990, at a special meeting, a motion to approve the application, subject to certain modifications and conditions was approved.
The plaintiffs, being aggrieved parties, filed a timely appeal, alleging, inter alia, that the vote of the Commission was illegal, arbitrary and in abuse of the Commission's discretion for the following reasons:
 1. The subdivision lots do not comply with the minimum lot size requirements;
 2. the subdivision does not comply with Chapter VI, Section 2c of the subdivision regulations because the streets are not separated by at least two hundred feet from adjoining land that is undivided and susceptible to being subdivided;
 3. the subdivision violates Chapter VI, Section 2I of the regulations because there is no provision for the required street slopes and that no slope rights have been obtained from abutting property owners;
 4. the subdivision violates Chapter IV, Section 4 of the regulations because there is no certification of compliance with all requisite regulations, ordinances, laws, statutes and standards; and
 5. the subdivision violates Chapter IX, Section 9.7 of the regulations because CT Page 428 there is no provision for conveying open space to a homeowner's association.
The burden of proof to demonstrate that the Commission acted arbitrarily is upon the plaintiffs. As to the first issue raised by the plaintiff, when the Commission interpreted Section 2.02 of the Regulations concerning minimum lot size calculations, it did so in its capacity as the agency charged with the enforcement of zoning regulations and, therefore, an appeal should have been brought before the Zoning Board of Appeals and, therefore, the plaintiff has failed to exhaust its administrative remedies.
"Functions of zoning authorities and planning commissions are separate, yet related, even if the two have separate members." Cristofaro v. Burlington, 217 Conn. 103. 106 (1991). A planning commission prepares and adopts a plan of development for the municipality while the zoning commission regulates the use of land. A planning commission is I empowered to consider applicable zoning regulations in reviewing a subdivision application. Krawski v. Planning and Zoning Commission, 21 Conn. App. 667, 670 (1990). Where an adequate administrative remedy exists, it should be exhausted. Butzgy v. Glastonbury, 203 Conn. 109, 116 (1987). The exhaustion doctrine need not be complied with where the administrative remedy is futile or inadequate or where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief sought. Conto v. Zoning Commission, 186 Conn. 106, 115 (1982).
In the instant case, the plaintiffs are appealing a decision of the Planning Commission in reviewing a subdivision. Section 2.02 is, nevertheless, a zoning regulation which has been adopted pursuant to Connecticut General Statutes Section 8-2. The Stonington Zoning Regulations Section 8.11c provide that any person claiming to be aggrieved by any order, requirement, or decision made by the ZEO, may appeal to the Zoning Board of Appeals. Section8-2 further provides that "these regulations shall be enforced by the zoning and planning commission or the officer appointed the Commission. . ." (emphasis added)
Connecticut General Statutes Section 8-6 provides that "the zoning board of appeals shall have the following powers and duties: (1) to hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any by-law, ordinance or regulation adopted under the provisions of this chapter. . ." The reference to "the official charged with the enforcement of this chapter" must be CT Page 429 read in conjunction with the language of other sections of the statutes in the same chapter. Conto, supra, 113. General Statutes Section 8-8 refers to "any officer, . . .charged with the enforcement of any order, requirement or decision of said board. . ." General Statutes Section 8-12 provides that the zoning regulations "shall be enforced by the officer or official board or authority designated therein. . ." Read in context, Section 8-6 authorizes zoning boards of any local officer, board or commission that has been designated by local regulation to be "the official charged with enforcement" of local zoning regulations. Conto, supra, 114.
Sections 8.11c and 8.12, read together, designate the zoning enforcement officer or the commission as the official entity charged with enforcing the zoning regulations. Since the Zoning Board of Appeals affords the plaintiff an available avenue for relief, which they must exhaust before appealing to the court this appeal must fail for failure to properly exhaust all administrative remedies. The Zoning Board of Appeals has been entrusted by the Zoning Regulations and by Connecticut General Statutes Section 8-6 with the "function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." Tofollon v. Zoning Board of Appeals, 155 Conn. 559, 560 (1967).
As indicated previously, there are limited exceptions to the doctrine of exhaustion. However, the plaintiffs have failed to claim that such an appeal would have been futile or ineffective.
Based on the above, this appeal must fail.
However, even if the Court were to decide the matter on the merits, the record supports the defendant's contention that the Commission did not illegally, arbitrarily or in abuse of its discretion, approve the plan on lot size calculations. The Commission properly chose to apply a new interpretation of an ambiguous regulation to a pending application that had been prepared in reliance upon another equally plausible interpretation. See Augeri v. Planning Zoning Commission,24 Conn. App. 172, 176 (1991).
The ambiguity in the regulation led Orvedal to submit an application that he, in good faith, believed to be in compliance with the regulations. There was no evidence at that time that his pro rata calculations were not in compliance. CT Page 430
The application did conform to Section 2.02 in "all essential matters" since the application utilized a reasonable interpretation of the regulation and, therefore, it did not have to comply with the "change" to the regulation which the Commission's later adopted policy constituted. See Hubbard v. Planning Commission, 154 Conn. 252 (1966).
The next issue deals with the question of whether the failure of the Wetlands Commission to approve the "stub road" precludes the adoption of a plan which includes a "stub road."
The plaintiff has failed to prove that the decision of the Commission on this issue was unreasonable, arbitrary or illegal." This Court must not substitute its judgment for that of the Commission unless it clearly appears that honest judgment has not been clearly and fairly exercised. The Commission properly exercised its discretion when it interpreted the applicable regulation to permit the approval of a plan reserving a roadway despite the fact that the Wetlands Commission approved the plan with the condition that the roadway be eliminated.
The third issue raised by the plaintiff also fails to convince the Court that the Commission acted arbitrarily, illegally or in abuse of its discretion in approving a subdivision with a retaining wall in lieu of slope rights.
The record clearly shows that the subdivision application complied with the regulations in that the retaining wall was approved to the Town's satisfaction in lieu of the 2' to 1' slope, in accordance with Chapter VI, Section 2I of the subdivision regulations.
Chapter VI, Section 2I of the subdivision
regulations state in pertinent part:
 "Side Slopes. Streets in cut or fill shall be provided with slopes not steeper than two (2) feet horizontal to one (1) foot vertical, or the permanence of the street grade shall be otherwise provided to the satisfaction of the Town."
Obviously, then, there is discretion vested in the Commission to otherwise provide for the permanence of the street grade in lieu of the slope rights. The record fully supports the decision of the Commission to approve the retaining wall in order to effect the purpose and intent of CT Page 431 the regulation.
Similarly, the plaintiff's argument that the Commission acted arbitrarily and illegally in approving the application with the applicant's certification of compliance must also fail.
The certification of compliance clearly conforms to the requirements of Chapter IV, Section 4 of the subdivision regulations.
 Chapter IV, Section 4 provides: Section 4. Certification — A proposed subdivision or resubdivision shall comply with existing local, regional, state or federal standards, requirements, regulations and/or ordinances applicable to said proposed subdivision or resubdivision. Certification that the proposed subdivision or resubdivision complies with the prerequisite local, regional, state or federal standards, requirements, regulations and/or ordinances shall be submitted in writing by the applicant to the Commission with the application for said proposed subdivision or resubdivision.
Attached to Orvedal's subdivision application is an engineer's report which certifies that the plans, specifications and designs are all in accordance with applicable local, regional, state or federal standards, I requirements and/or ordinances. This statement tracks the precise wording of the regulation.
The plaintiff's arguments that the record does not reflect compliance, that there is no written certification of compliance and that noncompliance was admitted by Orvedal's counsel, are all unavailing.
The applicant's surveyor submitted a letter of certification to the Town prior to review which stated that:
 "This letter is to certify that the plans submitted to you, "Billings Way Subdivision," Cove Road, Stonington, Connecticut, are in compliance with the Town of Stonington zoning regulations."
The regulation is clear that the applicant must CT Page 432 certify that all prerequisite regulations are satisfied. The Commission is entitled to interpret the regulation and to apply it with reasonable discretion to the facts in order to arrive at the conclusion that the regulation has been complied with. General Statutes Section 8-6; see Baron v. Planning 
Zoning Commission, supra, 257. The plaintiffs have not borne their burden of proof and have failed to show that the Commission's conclusion that Orvedal's certification of compliance satisfied the requirements of the regulation was "unreasonable, illegal or arbitrary." Id.
The record clearly shows that the application approved substantially complied with the requirements contained within Chapter VI, Section 2c of the regulations.
The final issue raised by the plaintiff is that the open space ownership, approved as part of the application, does not comply with the requirements of Chapter VIII, Section A8 of the subdivision regulations.
Chapter IX, Section 9.7 provides:
 The Commission shall require that any open space created by this Chapter be placed in a permanent open space ownership situation by fee transfer and proper development restrictions to the Town of Stonington, a recognized land trust, a homeowners association or existing fire district.
 Chapter VIII, Section A-10, entitled "Open Space," provides:
 A Warranty Deed for such land properly executed in triplicate or other such document as deemed by the Commission to provide an acceptable arrangement for the preservation of the area, shall be provided prior to final approval of the subdivision plan.
The record fails to reveal that neither a warranty deed or any other document providing an acceptable arrangement was submitted to the Commission for the preservation of open space.
Chapter X, however, also specifies the type of documents necessary to insure the preservation of open space. The record shows that the defendant left it up to the CT Page 433 Commission to determine the proper vehicle. There was no attempt to violate the spirit of the regulations or to circumvent the open space requirement. The record fails to reveal noncompliance with this intent of the regulation.
For the reason stated, the appeal is dismissed.
MIHALAKOS, J.