[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff Konover Development Corporation ("Konover") from the defendant Town of Windsor Planning Zoning Commission's denial ("Commission) of the plaintiff's applications for two special use permits and site plan approval for the proposed development of a 53,000 square feet "Big Y" supermarket. The plaintiff's appeal is brought pursuant to General Statutes § 8-8.
The following facts give rise to this appeal. Konover is in the business of developing and managing commercial shopping centers. It secured an option to purchase the property in question, consisting of approximately 15 acres of undeveloped land and a 3 acre parcel on which is situated the Old Town Plaza shopping center.[1] In July, 1993, the Commission approved Konover's application for a change of zone for this property from an industrial zone to a B-2 business zone in which a shopping center is allowed by special permit.
In April, 1994, Konover filed Site Development Application No. 397; Special Use Application No. 449 and Special Use Application No. 449A. If approved, these applications would have permitted the construction of the "Big Y" grocery store. In June, 1994, the Commission conducted a public hearing on the Konover applications. In support of its applications Konover presented the expert testimony of an CT Page 10992 engineer, landscape designer, architect and a traffic consultant. Opponents of the proposal testified in opposition, expressing their concerns about the impact of the proposal on traffic, the surrounding neighborhood and its effect on downtown business. The Town Planner and the Town's Traffic Engineer recommended approval of the application subject to certain design modifications.
At the close of the hearing the Commission denied the application. The comments of the Commissioners indicate that the Commission's decision was based on traffic concerns and the combined negative effect of the proposal on the downtown area and uncertainty about the need for another supermarket in Windsor. This appeal followed. Konover claims that the Commission's decision denying both the special use applications and site plan approval was based on unlawful or improper considerations and is not supported by substantial evidence.
I. STANDARD OF REVIEW
A land use commission acts in its administrative capacity in its review of special permit and site plan applications.Housatonic Terminal Corporation v. Planning ZoningBoard of the City of Milford, 168 Conn. 304 (1975). If the applications meets the requirements of the pertinent zoning regulations, the reviewing board must grant the application.DeMaria v. Enfield Planning Zoning Commission, 159 Conn. 534,540 (1970). The commission must make a three part inquiry. It must determine whether the proposed use is expressly permitted under the regulations; whether the standards set forth in the regulations are satisfied and whether conditions necessary to protect public health, safety, convenience and property values can be established. Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554 (1988). If the use is permitted and the conditions satisfied, the commission does not have the discretion to deny the application. Id. A denial of a special permit or site plan application must be based on substantial evidence. Connecticut Health Facilities, Inc. v.Zoning Board of Appeals, 29 Conn. App. 1 (1992). If the commission has stated the reasons for its decision, the reviewing court may consider only those reasons. If, however, the Commission does not state its reasons for denial, the court must search the record to determine if the denial is supported by substantial evidence. Sowin Associates v. Planning ZoningCommission, 21 Conn. App. 667 (1990). Review of the Commission's CT Page 10993 decision therefore requires a comparison of the specific criteria set forth in the applicable regulations for the granting of a special permit and the reasons given for the denial.
The property in question is in a B-2 zone. Under Regulation 5.2.6, certain B-2 uses are subject to the special use requirements at Regulation 2.4.4 Konover's proposal required two special use permit approvals. The first, application No. 449 or the site size special use, was required for "Developments on sites of more than two acres including larger single stores or other uses or shopping centers." The second application, No. 449A, was required for uses requiring parking otherwise prohibited in Section 5.2.2 provided such uses are in locations where the disruption to the retail frontage is not significant. Section 2.4.4 of the Regulations governs the granting or denial of special permits.
Although the letter from the Commission to the plaintiff denying its application did not formally state the reasons for the Commission's decision, the discussion by Commission members preceding the official vote reflects the basis for its decision. In particular, the comments of Commissioner Clark, who moved to deny the application, and the comments of Commissioner Fitzgerald were referenced as being the basis for the denial. Those reasons are deemed to be the basis for the Commission's decision, and the court will limit its review to those assigned reasons. DeMaria v. Planning and ZoningCommission, 159 Conn. 534, 541 (1970).
The Commission cited three reasons for its denial: traffic; the negative impact on the immediate community; and the lack of an urgent need for another supermarket coupled with the possible economic injury to an existing supermarket. Each of these reasons will be considered separately in conjunction with the relevant provisions of Section 2.4.4.
A. Traffic
Section 2.4.4 provides that a special use shall be granted only if the proposed use "is in accord with the public convenience, health safety and welfare after taking into account, where appropriate . . . [t]he resulting traffic patterns and adequacy of the street systems and other public facilities." CT Page 10994
Konover presented testimony demonstrating that (1) the traffic patterns will be superior to the existing patterns (2) the street system is adequate to support the increased traffic flow; (3) there is no heightened probability of accidents; and (4) the anticipated use is consistent with the recommendations of the Master Transportation Plan's use of Poquonock Avenue as an arterial street. These conclusions were supported by the town's traffic engineer who confirmed that his evaluation of Konover's proposal did not disclose any significant problems with respect to traffic patterns and the adequacy of the street system. In particular the engineer testified that sufficient capacity was available on Poquonock Avenue; that sight lines were adequate and that there were no accident problems at Hill Haven, the area in which the supermarket would be located.
In addition, a letter from Fuss O'Neill, consulting engineers, was read into the record. That letter indicated that Fuss O'Neill had reviewed the 1993 traffic impact study prepared by Konover's expert which addressed the potential traffic impact if the site were rezoned to accommodate the construction of a supermarket. Fuss O'Neill's report indicated that it "concurred with the methodologies and conclusions arrived at in the report but noted that some minor revisions could be made in the area of trip distribution and capacity analyses data input. However, these minor revisions would not alter the conclusions reached by Hesketh." The Fuss O'Neill report did note that development of the supermarket would substantially reduce the availability of future office space, but did not link that concern to any potential traffic flow problems.
Numerous opponents of the proposal testified. Many reside on Poquonock Avenue and expressed their deep concern about potential safety problems arising out of the increased traffic. In particular they noted that residents of Poquonock Avenue have great difficulty entering and exiting their driveways because of the steady flow of traffic. They observed that many drivers ignore the multiple lights on Poquonock Avenue creating many near accidents. The residents predicted that these problems would increase with the development of the supermarket
In denying plaintiff's application, the defendant, speaking through Commissioners Clark and Fitzgerald, cited CT Page 10995 traffic based concerns. Commissioner Clark noted that he had "a greater appreciation for the traffic in that area" than he had in the preceding year when the Commission approved plaintiff's zone change application. He also indicated it was his belief that the role of the Commission in reviewing a special permit application is to "lessen[ing] congestion in the streets." Finally, comparing plaintiff's application to the approval given for an Edwards supermarket, he observed that there was a "much heavier concentration of traffic than we had in the Kennedy Road area for the Edwards".
Commissioner Fitzgerald noted that under the applicable Regulations the question for the Commission was the effect of plaintiff's proposal on "existing traffic patterns and adequacy of the street system." Acknowledging that the Town Traffic Engineer reviewed plaintiff's application and endorsed it subject to minor modifications, he relied on his "common sense observation that Route 75 is limited in capacity and even though a pattern can be devised to get the cars in and out of the site", Route 75 might not be able to "carry that traffic."
§ 2.4.4 requires the Commission to determine whether the proposed use is consistent with the health, safety and welfare of the public, taking into account the "resulting traffic patterns and the adequacy of the street systems." As noted by Judge Fuller in his treatise, "the issue is whether the granting of the special permit will cause traffic congestion, not merely an increase in traffic in general." Fuller, Land UseLaw and Practice, § 49.13, p. 813 (1993).
The traffic reasons assigned by the Commission are inconsistent with the specific criteria set forth in § 2.4.4 C of the Regulations. While it is appropriate for the Commissioners to take into account their personal knowledge of the site; Moshe Felsman v. Zoning Commission, 31 Conn. App. 674
(1993); the reasons assigned by the Commission for denying the application are not based on "traffic patterns or the adequacy of the street systems" as required by § 2.4.4 of the regulations. Rather, as Commissioner Clark noted, he had "a greater appreciation of the traffic" than he had the previous year when he endorsed the zone change. He also referred to the Commission's obligation to "lessen congestion in the streets", a standard which is not set forth in § 2.4.4. Likewise, Commissioner Fitzgerald, while correctly noting that it was the Commission's obligation to evaluate existing traffic patterns and CT Page 10996 the adequacy of the street system, candidly acknowledged that, "I am generally skeptical about general complaints about traffic. We all generate traffic. If we live somewhere and if we work somewhere then we're driving around and we're somebody else's traffic problems at one point in the day. . ." In short, the traffic reasons cited by the Commission for denying plaintiff's application are not based on the specific standards set forth in § 2.4.4 of the Regulations. Neither the comments of the Commissioners nor an independent review of the record;Daughters of St. Paul, Inc. v. Zoning Board of Appeals,17 Conn. App. 53 (1988); reflects that the "resulting traffic patterns and adequacy of the street system" formed the basis of the Commission's denial. Accordingly, the Commission's denial of the plaintiff's application cannot be sustained based on the traffic related reasons cited by the defendant.
B. The Need For A Supermarket and Its Impact on the Community
§ 2.4.4 D of the Zoning Regulations requires the Commission to take into account "the public need of the proposed use or uses on the proposed site at the time of the application." In his comments Commissioner Fitzgerald considered the need for a new supermarket and the potential effect of the market on competitors:
 I don't think we have to get into a situation where you have to pass marketing judgments on whether or not there's a need for the supermarket. I will say, however, I haven't seen demonstrated an urgent need for another supermarket but I don't think it's our, should be our focus to say "well, can a fourth supermarket make a go? What will its impacts be on other supermarkets?"
In his comments Commissioner Clark observed that the proposed impact could be "positive in this section of town", but wondered whether it could "have a negative impact at the center of town."
Various speakers echoed his concern, noting that the proposed market might have an adverse effect on a well established market in the center of town. These claims, however, were not supported by any evidence. On the other hand, Konover presented unrefuted evidence of the need for the supermarket in CT Page 10997 the proposed location.
In Nielsen v. Board of Appeals on Zoning, 129 Conn. 280,284 (1942), the Court ruled that, "The record shows that the court's decision was predicated upon the premise that the defendant's denial of the application was based upon the objections of competitors, which were not a `proper factor to be considered under the zoning act.' The court was correct in holding that the zoning authority has no right to regard the prevention of competition as a factor in administering the zoning law." Likewise, in this case, it appears that one of the bases for the defendant's denial of the plaintiff's application was its concern that the new market would negatively effect existing markets in the central business district. This is an improper basis for the denial of the application, and cannot be sustained. Id. Furthermore, the Commission never explicitly determined that, pursuant to § 2.4.4 D of the Regulations, the applicant did not demonstrate the "public need of the proposed use." At best, it determined that such a need existed, but it was not an "urgent" one. Accordingly, the Commission erred in denying the plaintiff's application on either the ground that the plaintiff had not demonstrated the need for the project or on the basis of its perceived negative impact on competitors.
Finally, the defendant Commission also denied application No. 449A based on the same "broad rationale as the prior motion". In addition, the Commission noted that without approval of No. 449, consideration and approval of No. 449A would be irrelevant. Because the Commission's decision denying application No. 449 cannot be sustained, its decision denying No. 449A on the same grounds is also erroneous.
For the foregoing reasons, the plaintiff's appeal is sustained and the matter is remanded to the Planning and Zoning Commission.
SO ORDERED.
Robert L. Holzberg, J.