PATRICIA GARRISON *v.* PLANNING BOARD OF THE CITY OF STAMFORD ET AL.
(AC 20900)

Lavery, C. J., and Schaller and Flynn, Js.

318

Argued June 1—officially released October 16, 2001

*Brenden P. Leydon,* for the appellant (plaintiff).

*James V. Minor,* assistant corporation counsel, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff, Patricia Garrison, appeals from the judgment of the trial court dismissing her appeal from the decision by the defendant planning board of the city of Stamford (board) denying her subdivision application.[1] On appeal, the plaintiff claims that (1) the court improperly affirmed the board's denial of her application on the basis of an anticipated zoning use violation that was not inherent in the application as submitted, (2) the court improperly refused to consider her challenges to the validity of land use regulations because they were not brought in a declaratory judgment action, (3) the Stamford zoning regulations are void for vagueness and (4) the zoning regulations constitute an excessive fine. Because we agree with the plaintiff's first claim, we reverse the judgment of the trial court.

---

[1] The plaintiff's complaint also named as individual defendants the town clerk and the chairman of the planning board, pursuant to General Statutes § 8-8. We will use "defendant" to refer only to the planning board.

The following facts and procedural history are necessary for a proper consideration of the plaintiff's claims. The plaintiff is the owner of improved real property at 925 Long Ridge Road in Stamford. The building on the property has been leased to Coldwell Banker as a real estate office for a substantial period of time. On January 25, 1999, the plaintiff filed with the board an application for a subdivision of the subject property into three lots. The board held a public hearing on the application on May 25, 1999, and subsequently voted unanimously to deny the application on June 1, 1999. The reason given by the board in its letter notifying the plaintiff of the denial was "existing flagrant and specific zoning violations which would be intensified" by the subdivision.

The zoning use violation was that the real estate office expanded beyond the permitted accessory use of a real estate office to a residence. There has been a long-standing dispute with the city over that violation. The plaintiff had obtained a variance in 1982 to have not more than eight nonresident persons be employed as brokers. Evidence introduced at the public hearing showed that there were thirty-seven brokers who are nonresidents. That was a violation of § 19.2.2 of the zoning regulations, which provides that any grant of a variance is deemed to grant only the particular use and that any changes in the approved plan that materially affect an approved variance shall require further approval of the board.

The plaintiff thereafter appealed from that decision to the Superior Court. Following a one day trial, the court dismissed the appeal, finding that "the planning board lacked the authority pursuant to General Statutes § 8-26 to approve the application because the subject property has outstanding zoning violations." The plaintiff thereafter applied to this court for certification to appeal, which was granted. This appeal followed.

The plaintiff claims that the trial court improperly upheld the planning board's denial of her subdivision application on the basis of a claimed or anticipated zoning use violation that was not inherent in the application as submitted, where no regulation authorized the denial of a subdivision application on such a basis. We agree and accordingly reverse the judgment of the trial court.

"At the outset, we note that the [board] acted in its administrative capacity. *Reed* v. *Planning & Zoning Commission*, 208 Conn. 431, 433, 544 A.2d 1213 (1988). As such, it has *no discretion or choice* but to approve a subdivision if it conforms to the regulations adopted for its guidance." (Emphasis added; internal quotation marks omitted.) *Paige* v. *Town Plan & Zoning Commission*, 35 Conn. App. 646, 657, 646 A.2d 277 (1994), rev'd on other grounds, 235 Conn. 448, 668 A.2d 340 (1995); see also *RK Development Corp.* v. *Norwalk*, 156 Conn. 369, 375–76, 242 A.2d 781 (1968); *Forest Construction Co.* v. *Planning & Zoning Commission*, 155 Conn. 669, 674–75, 236 A.2d 917 (1967). "In the context of review of subdivision applications, [p]roceedings before planning and zoning commissions are classified as administrative." (Internal quotation marks omitted.) *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 696–97, 628 A.2d 1277 (1993).

The principal issue in this appeal is whether the planning board acted within its authority when it denied the plaintiff's subdivision application on the basis of alleged, existing zoning use violations on that part of the property occupied by Coldwell Banker. The defendant claims that § 8-26 precludes the board from approving a proposed subdivision where the property proposed to be subdivided has existing zoning use violations. We disagree.

General Statutes § 8-26 provides in relevant part: "[N]othing in this section shall be deemed to authorize

the commission to approve any such *subdivision or resubdivision* which conflicts with applicable zoning regulations. . . ." (Emphasis added.)

It is well settled that one of the primary guides for interpreting a statute, indeed the first guide to be consulted, is the language of the statute itself. See, e.g., *Taravella* v. *Stanley*, 52 Conn. App. 431, 439, 727 A.2d 727 (1999); *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 131, 674 A.2d 1349 (1996). The interpretation of the language often has led our Supreme Court to choose between the interpretations of a statute contended for by the parties on the basis of rules of English grammar. See, e.g., *Gonsalves* v. *West Haven*, 232 Conn. 17, 22, 653 A.2d 156 (1995) (statutory definition must be read in light of "ordinary rules of English grammar and sentence structure"); *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 852, 633 A.2d 305 (1993) (reading statute "in the light of ordinary rules of English grammar and sentence structure").

Applying the ordinary rules of English grammar and sentence structure to § 8-26, the clause, "which conflicts with applicable zoning regulations," has as its antecedent not "the property," as the defendant would have it, but "any such subdivision or resubdivision."

In addition, our courts have had occasion to interpret § 8-26, including the provision at issue here regarding a municipality's authority to reject a subdivision plan that conflicts with applicable zoning regulations. In *Krawski* v. *Planning & Zoning Commission*, 21 Conn. App. 667, 672, 575 A.2d 1036, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990), we noted that our function is "to decide whether the commission correctly determined that *this subdivision application* contains an existing violation of the town zoning regulations. . . . A commission may legally base subdivision application

denials on zoning violations *'inherent in the plan itself as submitted'* . . . ." (Citations omitted; emphasis added.) Accordingly, we reversed the trial court's judgment sustaining the plaintiff's appeal in *Krawski* because the "violations are *apparent on the face* of the submitted subdivision plan." (Emphasis added.) Id., 673.

In *Federico* v. *Planning & Zoning Commission*, 5 Conn. App. 509, 500 A.2d 576 (1985), we clearly stated the proper application of the provision of § 8-26 at issue here: "These regulatory and statutory requirements must be read to concern zoning violations *inherent in the plan itself as submitted* and not . . . use violations. Such requirements relate to subdivision plans which *in and of themselves* would violate zoning regulations. Examples of such conflicts include approval of a subdivision plan involving one-half acre lots in a one acre zone, or approval of a plan for a residential subdivision in an industrial area which prohibited such use." (Emphasis added.) Id., 515.

We stated in *Federico* that only zoning violations that are inherent in the plan as submitted may be a basis for denying the subdivision application. The defendant's claim that the zoning violations in this case are inherent in the application as submitted is further undercut by the comments of the defendant's own zoning enforcement officer on the plaintiff's application. After reviewing the subdivision application, he stated in a letter to the planning board: "This *property* has outstanding zoning violations upon it which should be corrected prior to the granting of any subdivision or building permits." (Emphasis added.) That statement plainly indicates that the zoning enforcement officer's concerns, mirrored by the planning board, were not about the subdivision plan itself, but were geared toward having the outstanding zoning violations corrected. That statement by the zoning enforcement offi-

cer, who is charged with ensuring that the city's zoning regulations are adhered to by property owners, demonstrates that the city's concerns were not with the actual subdivision, but with remedying a previously existing zoning use violation in a portion of the property that was sought to be subdivided.

The defendant also points to an opinion of the city's law department, the multiple listing service document concerning the property and evidence of traffic problems because of the use violation as further support for its decision to deny the plaintiff's subdivision application. Although the concerns raised by the city clearly are valid, and we do not here endorse the plaintiff's apparent continuing violation of the zoning regulations, they do not permit the city to use the separate subdivision plan approval process as a lever to get the plaintiff to abate her zoning violations.

In further support of its denial of the plaintiff's subdivision application, the defendant includes in its brief several quotations from the public hearing that took place to consider the subject subdivision application. Although those quotations are replete with references to the existing zoning violations on the property, the existence of which the plaintiff does not here contest, the defendant does not make reference to any testimony about zoning violations distinctly inherent in the subdivision application. The absence of any complaints about what *would* happen if the subdivision application were granted, which is proper to consider when deciding whether to approve such an application, combined with the multitude of complaints about the present situation, indicates that the city's complaints are with the existing situation, not with the proposed subdivision plan.

The statute permitting a planning board to disapprove a subdivision application that conflicts with applicable zoning regulations cannot be used to justify a planning

board's action in disapproving a subdivision application that, although not itself in conflict with applicable zoning regulations, is proffered by a landowner who often has been in conflict with existing zoning use regulations. As this court and our Supreme Court often have stated in acting on appeals involving subdivision applications, the planning board's responsibilities are purely ministerial—if the applicable requirements are complied with, the application must be approved. The defendant here is attempting to engraft the additional requirement of the absence of prior zoning use violations onto the statutory requirements. That it cannot do. The existing use violation is not a violation of zoning regulations that is contemplated by § 8-26 to defeat the subdivision application. The application itself does not contain an existing zoning violation on its face, as is contemplated by § 8-26.

Finally, we note that our decision here, that the city cannot reject a subdivision application on the basis of existing zoning violations, where the violations are not inherent in the application, does not leave the city without a remedy for the alleged flagrant zoning violations being committed by the plaintiff. General Statutes § 8-12[2] provides a number of ways that a city can punish

---

[2] General Statutes § 8-12 provides in relevant part: "If any building or structure . . . or land has been used, in violation of any provision . . . of any bylaw, ordinance, rule or regulation made under authority conferred [by this chapter], any official having jurisdiction, in addition to other remedies, may institute an action or proceeding . . . to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer . . . designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or . . . to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists . . . shall be fined not less than ten nor more

flagrant zoning scofflaws: Cease and desist orders, fines and, even in certain cases, imprisonment. The zoning enforcement officer did not use any of those statutory tools, which are available to abate the zoning violations of which the city now complains. Those tools do not, however, include denial of an otherwise lawful subdivision application.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal from the defendant's denial of her application for a subdivision.

In this opinion FLYNN, J., concurred.

SCHALLER, J., dissenting. The majority reverses the judgment on the basis of its determination that the trial court incorrectly upheld the decision by the defendant planning board of the city of Stamford (board) that the subdivision application by the plaintiff, Patricia Garrison, contained an inherent violation of "applicable zoning regulations." I conclude that the board's determination was correct and that the trial court properly upheld the board's denial of the application. I further conclude that the trial court's disposition of the plaintiff's remaining claims is correct and would affirm the judgment of the trial court.

As a threshold matter, I reiterate our standard of review on appeals from the decisions of zoning boards on subdivision applications. "Conclusions reached by the [board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board].

---

than one hundred dollars for each day that such violation continues . . . . Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service . . . or continues to violate any provision of the regulations . . . shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. . . ."

The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . The action of the [board] should be sustained if even one of the stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) *Property Group, Inc.* v. *Planning & Zoning Commission,* 226 Conn. 684, 697, 628 A.2d 1277 (1993).

The issue decided by the majority turns on the meaning of an "inherent" violation. The majority relies on our decision in *Federico* v. *Planning & Zoning Commission,* 5 Conn. App. 509, 500 A.2d 576 (1985), to support its position that the zoning violations in this case do not constitute "inherent" violations in the subdivision for which the plaintiff applies. The majority claims, in fact, that, to provide a basis for rejecting a subdivision application, the violations must appear on the face of the subdivision application. Neither the applicable statute nor *Federico* supports that interpretation. A planning board is authorized to deny a subdivision on that ground as long as such application violates any applicable zoning regulation. Such a violation involves virtually any applicable zoning regulation because the zoning regulations are incorporated in the subdivision regulations. See *Krawski* v. *Planning & Zoning Commission,* 21 Conn. App. 667, 670–71, 575 A.2d 1036 (upholding denial of subdivision application on ground of applicable existing zoning violation incorporated by reference in subdivision regulations), cert. denied, 215 Conn. 814, 576 A.2d 543 (1990). Our Supreme Court has stated that "[w]e also must look to the overall intent of the applicable regulations in considering subdivision applications. . . . Regulations, like statutes, do not exist in a vacuum." (Citation omitted; internal quotation marks omitted.) *Smith* v.

*Zoning Board of Appeals*, 227 Conn. 71, 92, 629 A.2d 1089 (1993) (reversing judgment of this court, which held that planning and zoning board of appeals did not have authority to consider historical factors in granting or denying subdivision application), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994).

Although in *Federico* we upheld a planning and zoning commission's granting of approval for a subdivision, and rejected the trial court's determination that the subdivision at issue in that appeal violated zoning regulations, the reasoning of *Federico* supports my conclusion. The *Federico* court stated that "[a]t the time of the trial, any claimed violations of zoning regulations were entirely speculative. Zoning concerns use . . . and until residential use of the lot is attempted it cannot ordinarily be known what yard or frontage requirements might be violated." (Citation omitted.) *Federico* v. *Planning & Zoning Commission*, 5 Conn. App. 514–15.

In *Federico*, the potential use in question would have been the residential use of the lot. If existing, the residential use would have triggered and, presumably, violated the applicable yard and frontage regulations. The court stated that "[u]ntil a building permit application is filed in the future, there are no 'applicable' yard and frontage requirements." Id., 515. The court indicated that if a use implicates zoning issues properly considered for a subdivision application, and if that use is an existing and not merely a potential use, that would be a proper ground for denial of the application. The court stated "[e]xamples of such conflicts include . . . approval of a plan for a residential subdivision in an industrial area which prohibited such use." Id. The court rejected only "[i]nchoate violations involving the use of the lot in question, which may never occur . . . ." Id.

In the present case, an actual, existing use (a commercial real estate office that had expanded beyond the

use authorized by a variance) caused the board to find that the proposed subdivision violated an applicable regulation. Section 3.6.3 of the Stamford subdivision regulations provides: "The Board shall consider the layout of the proposed subdivisions with due regard to . . . traffic . . . and shall take into consideration the general health, safety and welfare of both the existing residents of the neighborhood, and future residents of the proposed subdivision."

In its statement of facts in its brief, the board cites statements of a resident at the public hearing describing "traffic problems in the area, and the intensive traffic caused by the real estate broker's office." Also at the hearing, the city's land use bureau chief "noted that if the subdivision was granted, then the zoning violation would be exacerbated, since the addition of two single-family houses would increase traffic . . . ." The decision by the board to reject the application stated that it was "based on existing flagrant and specific zoning violations which would be intensified due to the reduced size of the existing parcel and the addition of two new lots."

In seeking to uphold the board's disapproval of the application, the defendant argues in its brief: "Instead of having 1.5 acres with a large, flagrant zoning violation, the planning board was being asked to condone or ignore the zoning violation in order to allow two more lots, with the increase in traffic from adding two single-family residences, and with the reduction of the size of lot with the zoning violation by 50 percent (from over 1.5 acres to over one acre). Therefore, [General Statutes § 8-26] required that the planning board deny the subdivision application. The trial court properly upheld the decision of the planning board, and properly rejected the claim that the violation didn't exist, or was beyond the control of the plaintiff."

The defendant's concern with the use issue compounded by the traffic congestion that would result appears to be exactly the type of inherent violation contemplated by the *Federico* court. It is beyond dispute that a problem of excessive traffic will not be cured by reducing the area occupied by the offending business; the board properly considered that in denying the subdivision application. The relevant question in our review of the decision is not whether we arrive at the same conclusion as the board under the facts as presented, but whether the record before the board supports the decision reached. *Pelliccione* v. *Planning & Zoning Commission*, 64 Conn. App. 320, 333, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001). Accordingly, I conclude that the decision of the board in rejecting the plaintiff's subdivision application is " 'reasonably supported by the record' " and " 'supports the decision reached.' " *Property Group, Inc.* v. *Planning & Zoning Commission*, supra, 226 Conn. 697.

The majority also supports its position by describing the role of the zoning board in reviewing a subdivision application as "purely ministerial." This characterization misapprehends the role of the board in the application process and elevates the applicant's expectation of approval to a virtual entitlement. As our Supreme Court has stated, in the context of reviewing such a claim of entitlement, a "subdivision application [is] subject to the [board's] discretion and . . . [town] land use regulations . . . [may] not clearly entitle [one] to approval." *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 323, 627 A.2d 909 (1993). It is true that "[t]he planning [board], acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citation omitted.) *Forest Construction Co.* v. *Planning & Zon-*

*ing Commission,* 155 Conn. 669, 675, 236 A.2d 917 (1967). That merely states the truism that "[i]n passing upon subdivision plans, the [board] is to be controlled by the regulations which it has adopted." *South East Property Owners & Residents Assn.* v. *City Plan Commission,* 156 Conn. 587, 591, 244 A.2d 394 (1968). If the regulations permit consideration of such factors, however, "[t]he members of the [board are] entitled to consider any facts, concerning the area, traffic, intersection and surrounding circumstances, which they had learned by personal observation, and their conclusions as to the effect of the use of the network of roads in the subdivision as shown on the proposed plan on traffic safety and hazard to the public are ones which they could reach without the aid of experts." *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 675. As with applications for special permits, if the criteria set forth in the regulations are met, the board has no discretion to deny the application. See *Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 628, 628, 711 A.2d 675 (1998). That does not foreclose, however, the board's discretion in determining whether the proposed application meets the standards set forth in the regulations. See id. Furthermore, characterizing the board's role as ministerial renders superfluous the substantial hearing process that may accompany the decisions of many boards, as in the present case.

As to the remaining issues the plaintiff raised on appeal, I agree with the trial court's dispositions. The board's denial of the application was expressly provided for in § 3.6.3 of the subdivision regulations. The plaintiff, moreover, may not in the same proceeding contest the denial of her application and the constitutional validity of the same zoning regulations. See *Bierman* v. *Westport Planning & Zoning Commission,* 185 Conn. 135, 139, 440 A.2d 882 (1981).

Accordingly, I would affirm the judgment of the trial court.